Weehawken Ferry Co. v. Sisson.

# JUNE TERM, 1864.

THE WEEHAWKEN FERRY COMPANY, appellants, and CHARLES G. SISSON and others, respondents.

1. A remainder is vested where there is a present, fixed right of future enjoyment.

2. By a deed of bargain and sale in the usual form, an estate was conveyed to the grantees, in trust to permit the grantor and his family, and the father of the grantor, during their lives respectively, to enjoy the

estate, and to take the rents and profits, and after their death, in trust to convey the premises to the son of the grantor, and "to such other lawful issue as the grantor may then have living, share and share alike, in fee simple, as soon as he or they arrive at age." *Held*—

*First.* That the legal estate, by force of this conveyance, was in the trustees.

*Second.* That the son of the grantor had a vested interest, which was not determinable by his death before the happening of the contingency upon which the legal estate was to be conveyed to him, viz. by the determination of the intervening life estates.

*Third.* That the word "issue" in the conveyance in question, was synonymous with "descendants," and embraced the grandchildren of the grantor.

3. Where trusts and limitations are expressly declared in a deed, the same rules of construction must be applied to them as in the case of a limitation of a legal estate.

4. By force of the statute, (*Nix. Dig.* 102, § 56,) a decree directing a conveyance to be made, vests the estate, so that the rights of the parties, in case of a variance between the terms of the decree and of the conveyance, must depend upon the former rather than upon the latter. Such a decree must be construed by the same rules as would have been applicable to a conveyance made in conformity to it.

5. When a final decree in Chancery is complete in itself, its language being intelligible, the bill and answer cannot be read for the purpose of limiting its force and controlling its legal effect.

———

This was an appeal from a decree of the Chancellor. The opinion is reported in 2 *Beasley* 168.

On the 10th of August, 1807, Mindert Garrabrants (2d) executed to the father and brother of his wife a conveyance in fee of all his lands, including those claimed by the respondents. The conveyance was upon certain trusts, therein specified. In the following year he exhibited his bill in Chancery, setting up a mistake in the limitations of the trusts, and on the 9th of September, 1808, a decree was made, vacating the deed, and directing him to convey the premises, in a certain specified time, to the trustees, upon certain trusts defined in the decree, to wit: in trust for the use of himself and his father, Mindert (1st), for life, and in the language of the decree, "that then the said trustees, &c., shall convey the whole of the said premises to the said Min-

dert Garrabrants (3d), son of the said Mindert Garrabrants, jun., and the said Effie Garrabrants, his wife, one of the defendants in this cause, and to such other lawful issue as he, the said Mindert Garrabrants, jun., the complainant, may then have living, share and share alike, in fee simple, as soon as he or they arrive of age, reserving to the widow of the said Mindert Garrabrants, jun., if any he should leave, the said widow's legal estate of dower in the said premises."

The deed was not made within the time directed in the decree, but shortly afterwards, and contained a declaration of trusts, slightly variant in terms from the language of the decree.

In 1825, Mindert Garrabrants (1st), one of the *cestuis que trust* for life, died.   In 1834, 1835, and 1836, Mindert Garrabrants (3d), by deed of bargain and sale, with covenants of general warranty, conveyed the premises in dispute to different parties, from whom the appellants claim title.   Mindert (3d) died in 1837, leaving two daughters, who, with their husbands, are the respondents. Mindert (2d) outlived his son, and died in 1846. The trustees are dead, and in 1852, the only son and heir-at-law of the survivor of the trustees made a conveyance of the property in dispute to the said two daughters of Mindert (3d), as the only lawful issue of Mindert (2d) living at his death.

*Mr. J. P. Stockton* and *Mr. Gilchrist,* for appellants.

*Mr. A. O. Zabriskie* and *Mr. Williamson,* for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.   Both parties to this controversy claim title to the premises in question, by force of the limitations of trusts created by Mindert Garrabrants (2d), and the question, therefore, is as to the just construction and legal effect of those limitations.

The appellants' title is derived from the deeds of conveyance executed by Mindert Garrabrants (3d), while the re-

spondents, the two daughters of Mindert (3d), claim through the conveyance made to them by the heir of the survivor of the trustees, in pursuance, as they allege, of the terms of the trust, as the lawful issue of their grandfather, Mindert (2d.)

The decision must rest on the solution of the question, what estate had Mindert Garrabrants (3d) in the premises?

The appellants, claiming to hold under him, contend that at the time he passed away the title, he had a vested remainder, and that at the time of the death of his father, Mindert (2d), he was the only person living, who answered to the description of the issue who were to take, within the meaning of the trust.

First, then, was the estate of Mindert (3d) a vested or contingent remainder?

The deed which was executed is, so far as relates to the legal title, in the ordinary form of a deed of bargain and sale, conveying the estate to the trustees in fee, and consequently the legal title became vested in them, the effect of the statute of uses being spent in perfecting such title.    The trusts declared were a life estate in favor of the grantor and his father, and the further direction to the trustees was, upon the death of the survivor, to convey the premises unto Mindert Garrabrants (3d), and to such other lawful issue as he, Mindert (2d), should then have, share and share alike, in fee simple, as soon as he and they should arrive at full age.

Thus, it will be perceived, the estate was limited, after the expiration of the longer of two lives, to Mindert (3d), and such other lawful issue of the settler as might be living at his death.    As these trusts and limitations are expressly declared in the deed, the rules of construction must be the same as in case of a limitation of the legal estate, and it would seem that the application of the ordinary rules which test the character of legal estates, to these trusts, free the question from all uncertainty.    Directly on the execution of the deed, there was fixed in Mindert (3d) a present right of future enjoyment. The only uncertainty attending his estate was, that the remainder so passed to him might expire before the determination of the particular estates.    But this is

the unavoidable infirmity of all remainders. In all cases, as it has often been observed, the remainder-man may die without issue before the running out of the particular estate. On the creation of this estate, the remainder-man had the right of future possession in as perfect a form as was possible; his estate was limited on an event that was certain to happen, and he was capable of taking at any time the particular estates might be spent. His estate is evidently embraced in the usual description of a vested remainder. Mr. Fearne says, " a vested remainder may be defined to be one that is so limited to a person in being and ascertained, that it is capable of taking effect in possession or enjoyment on the certain determination of the particular estate, without requiring the concurrence of any collateral contingency." *Fearne on Rem.*, § 173, *p.* 61, (*4th Am. ed.*)

" It should be remembered too," to use the language of Professor Washburn, " that no degree of uncertainty as to the remainder-man's ever enjoying the estate which is limited to him by way of remainder, will render such remainder a contingent one, provided he has by such limitation, a present, absolute right to have the estate, the instant the prior estate shall determine." 2 *Wash. on Real Prop.* 227.

It seems clear then, that the remainder which passed to Mindert (3d) was vested, and in no wise contingent, in the legal sense.

If this point had not been formally taken on the argument before this court, I should not have thought it necessary to refer to authorities in its elucidation.

According to the foregoing view, Mindert (3d) was entitled to at least a third of the estate in remainder. And this leads to the second topic of discussion, was he entitled to the residue, or did each of his two daughters equally share the remainder with him ?

The investigation of this point requires an examination of the precise language of the limitations of the trust, as well as the application of rules of construction which are, to some extent, dependent on the character of the instrument to be

interpreted. It, therefore, becomes necessary at the outset to settle whether the terms of the trust are to be regarded as contained in the decree of the Court of Chancery, or in the deed which was subsequently executed in conformity thereto.

The history of the decree and the deed is briefly this: On the 10th of August, 1807, Mindert Garrabrants (2d) executed a deed of trust to his wife's father and brother; and in the year following he applied to the Court of Chancery to set aside such conveyance, on the ground that it did not conform to his intentions. The court granted this prayer, and in its decree declared, in explicit terms, the new trusts on which he should convey the property to the trustees, directing such conveyance to be made within a specified period. The deed was afterwards executed, but not within the time limited.

By the act, (*Nix. Dig.* 102, § 56,) and which has been in force since the year 1799, it is enacted, " Where a decree of the court of chancery shall be made for a conveyance, release, or acquittance, and the party against whom the said decree shall pass, shall not comply therewith by the time appointed, then such decree shall be considered and taken in all courts of law and equity, to have the same operation and effect, and be as available, as if the conveyance, release, or acquittance had been executed conformable to such decree."

It was contended by the counsel of the appellants, that as the deed above mentioned was not executed within the time limited in the decree, the estate vested under the decree, by force of this statute, and that, consequently, it is the decree and not the deed, which is to be construed.

With a view of considering the effect of the decree, I shall, for the present, assume the correctness of this position.

Regarding, then, the decree as the depository of the trust, and as the subject of construction, it was next insisted that its meaning was to be ascertained by the use of far different rules of construction than those which obtain in the interpretation of sealed instruments. It was said that the strict rules applicable to the construction of deeds, were not to be applied to the construction of decrees.

In support of this theory a multitude of cases were cited, which tended to show that it is the usual practice in the Court of Chancery, both in England and in this country, when the decree directs a conveyance to be made, to refer it to a master to settle the terms of such conveyance, and that the words of such decree are subject to a liberal construction. But it cannot escape observation, that the decrees referred to are interlocutory and not final in their character, while in the decree under consideration, no reference whatever was ordered, but the Chancellor settled and defined the trust without the aid of the master. The competence of the court to make such decree cannot be disputed. It is the ordinary course to refer matters of account for the examination of a master, yet, if the court, without such recourse, should itself adjust and settle the account in a final decree, such decree could not properly be placed in the same grade with a merely interlocutory order. I have not been able to perceive that the decree in question bears any resemblance, considered as a subject for construction, to those referred to in the cases cited.

But it was further urged, that the bill and answer were parts of the record, and that it was legitimate, when the meaning of the decree was drawn in question, to resort to them for the purpose of construction. The offer was to show that the term "issue," contained in the decree, had been used in the pleadings by the settler, in the limited sense of children.

The cases referred to, do not, in my opinion, sustain, in any substantial degree, the principle contended for. For some purposes, it is not doubted, the pleadings in a suit in equity are to be taken and examined in connection with the decree. It is certainly true, as it was insisted, that the rule of law requires the pleadings to be adduced, when the decree is brought into court as evidence. The reason of this rule is obvious. There are few decrees which do not, in some particulars, refer to the pleadings, either expressly, or by necessary implication. In such cases, where the decree refers to the plead-

ings, or to an intrinsic document, as containing a statement of
facts necessary to the decree, and not embodied in it, such
pleadings, or such document, as far as referred to, upon gen-
eral principles, become part of the decree, for every purpose
of construction.   But in the case before us the decree, on the
point in issue, made no allusion to the pleadings; it was
complete and intelligible in itself; and the pleadings were to
be ransacked to give it a meaning which its language, with-
out such help, would not convey. I have examined with care
the many cases on the printed brief of counsel, and I do not
find one of them which countenances such a proposition. I do
not find even a dictum which warrants the idea, that where a
final decree has been made, which is complete in itself, and in
which the language is intelligible, the bill or the answer
can be read for the purpose of limiting the force of its words
and controlling its legal effect. I think the sound doctrine is,
that a decree in equity rests on the same ground, in this re-
spect, with a deed, or a judgment at law.

This case, in my apprehension, would afford an illustration
of the impolicy of admitting the contrary doctrine. The offer
here was to show, that although in that part of the bill of
complaint in which the terms of the trust were stated and
defined, the word " issue" had been used in the same con-
nection in which it is now found in the decree, yet that in
other parts of the bill, the word " children" was referred to;
so that from the pleadings, taken as a whole, it was clear, that
Mindert (2d), the settler, had used the word " issue " in the
sense of " children." In other words, the Court of Chancery
sitting in this case, was asked to go back and review the
record of a suit decided over half a century ago, and ascer-
tain from that record the intention of the settler, in order to
arrive at the intention of the court.   Now, it seems obvious
that it was the business of Chancellor Bloomfield, to ascer-
tain the intention of the settler, and express such intention
in his decree.   We are bound to suppose that he discharged
that duty.   His decree certainly purports to do so, and for
this court to decide that the decree does not carry into effect

the trust contained in the pleadings, and to enforce it in a sense not warranted by its terms, would amount simply to a reversal of such decree, and that too, in a collateral proceeding.

Thus far this point has been considered, irrespective of the effect of the statute of this state, which has been above recited. The Chancellor held that the terms of the decree, by force of the act, must be construed precisely as the conveyance itself would have been, if executed within the time appointed for its execution. This seems, clearly, to be the correct rendering of the statute. The language of the act is, that the decree shall have the same "operation and effect" as if the conveyance had been executed "conformable" to such decree. A conveyance executed conformably to a decree, must, as I think, be so executed as to give it the same legal effect as the decree; the two need not be in the same words, but their efficacy in law must be identical. Nor do I think that a decree can have the same "operation and effect" as a deed, unless the same rules of construction are to be applied to each.

It should not be overlooked, also, that this matter has a bearing of some general interest. In most cases of decrees to make conveyances, against parties non-resident in this state, such decrees, by force of the act, are to take the place of deeds. On this account, as in the form adopted in this case, they should be specially drawn, so as to settle, definitely, the qualities and legal character of the estate which is to vest under them. As they are thus to become the muniments of the title, it would seem to be unwise to apply to them methods of interpretation, which must inevitably introduce uncertainty in their legal operation.

There is one other preliminary matter to which it is proper to advert.

It was a part of the argument, that the trusts in question were executory, and that on this account, much latitude of construction was admissible.

It is conceded that there is a difference in the mode of construing a certain class of trusts executory, from that which

is applied to trusts executed. In a certain sense, all trusts are executory ; but a critical examination of the decisions will show, that to be executory so as to fall within the relaxation of the ordinary rules of construction, the limitations of the equitable interest must be incomplete, and something must be left to the trustee to define and settle. Lord Northington, in the case of *Austen* v. *Taylor*, 1 *Eden* 366, thus de-- lineates, with distinctness, the modern doctrine : "Whenever the assistance of this court (equity) is necessary to complete a limitation, in that case, the limitation in a will not being complete, that is sufficient evidence of the testator's intention that the court should model the limitations ; but where the trusts and limitations are already expressly declared, the court has no authority to interfere, and make them different from what they would be at law."

In the case before us, the limitations of the trust have been defined by the settler himself ; the whole duty of the trustees was merely formal, that is, to make conveyances on the occurrence of specified events of legal estates of definite quality. I think it was properly held, that with regard to such a trust, the same rules of construction were to be used, as are applicable to sealed instruments relating to purely legal rights.

In addition to the cases cited on this point in the opinion of the Chancellor, see *Lewin on Trusts* 177.

The conclusion, then, to which my examination of the foregoing points has led me, is that the ordinary rules of construction, proper to sealed instruments, are to be applied to the language creating the trusts in question, whether that language is to be considered as residing in the decree or in the deed.

The clause to be construed, and on which the controversy depends, is that portion of the limitation of the trusts, which relates to the disposition of the property after the expiration of the life estate. The direction to the trustees is, "to convey the whole of said premises to said Mindert Garrabrants (3d), &c., and to such other lawful issue as he," the settler, "may then have living, share and share alike, in fee simple." The

descendants of the settler were his son, Mindert (3d), and the two daughters of Mindert (3d); and the question is whether these two daughters answer to the description of "such other lawful issue" in the foregoing clause of the deed; and whether, therefore, as such, they take equally with their father.

That the granddaughters are as much the "issue" of their grandfather as their father was, cannot be denied. Standing uncontrolled by the context, the word "issue" is synonymous with descendants. Therefore, unless in some way limited in its sense, it embraces equally the son and his children. The argument then attains this point, is there, in the language of the deed, or what I consider the same thing, the decree, anything to limit the signification of this term?

It is said that the intention could not have been to distribute the property equally, between the son and the descendants of the son. But we cannot legitimately know anything of the intention, except from the language of the deed. And even if the intention were certain, it could not limit the effect of a term of clear signification. If the terms used were doubtful, then the intent of the parties would become material. But the words of a deed cannot be curtailed or distorted from their full and proper signification, although the court might be satisfied that such words have been employed ignorantly, or by inadvertence, and express a meaning different from that intended. The word "issue" clearly means grandchildren, and as the intent must be ascertained from the language employed, we are bound to consider that it was intended to embrace descendants of the second, as well as of the first degree. The word cannot be limited except by express words, or a necessary inference tantamount to express words.

Some stress was laid on the phrase "*such others,*" as indicative of issue of the same degree as the son. But these words are not susceptible of such meaning. With as much propriety it might be argued that such terms impart issue of the same sex as the son. If the expression should be now

2s*

used, "the judges of this court, and all *such other persons* as are here present," it could scarcely be maintained that the class embraced in the expression "such other," meant persons of the degree of judges. The words "such other," in such connection, have a familiar and well settled meaning. The expression "such other issue," in such connection as we find it, clearly takes in the grandchildren. I think the language should not be frittered away by refinements. In questions touching the construction of deeds, where subtlety begins sound law usually ends.

That the word issue has, in law, the signification thus ascribed to it, is the common doctrine of the books. "The word *issue*," says *Jarman, vol.* 2, *p.* 33, "when not restrained by the context, is co-extensive and synonymous with descendants, comprehending objects of every degree. And here the distribution is per capita, not per stirpes."

"Where the description 'issue' is employed in a will as a word of purchase, it will, in its ordinary import, comprise all those who claim as descendants from or through the person to whose issue the bequest is made, *i. e.,* grandchildren and great grandchildren, as well as children; and in order to restrain this usual sense of the word, a clear intention must appear upon the will." 2 *Williams on Ex'rs* 999.

But in addition to the fact that this word issue has the extent of signification which the above named writers attribute to it, a still more important feature remains to be noticed, which is, that *in deeds* the word invariably has a technical meaning, being always used as a word of purchase, and when so used universally including descendants of every degree. The judicial decisions and text writers all concur on this point, as will conclusively appear from the following citations. *Fearne on Rem.* 106, 118; 4 *Kent* 230; *Ram on Wills* 115; 6 *Rep.* 17; *Doe* v. *Collis,* 4 *T. R.* 299; *Bagshaw* v. *Spencer,* 2 *Atk.* 582; *Coke Litt.* 20–6; 1 *Roper. on Leg.* 158; 2 *Spence's Eq. Jur.* 154; *Butler* v. *Stratton,* 3 *Brown Ch. C.* 367; *Cook* v. *Cook,* 2 *Vern.* 545; *Myth* v.

*Blackman*, 1 *Ves., sen.*, 195; *Davenport* v. *Hanbury*, 3 *Ves.* 287.

The word "issue," then, in its ordinary legal meaning, embracing grandchildren as well as children, and possessing as it does, when used in deeds, a technical sense to the same effect, I am irresistibly led to the conclusion, that, as the daughters of Mindert (3d) were severally born, the estate opened to let them in, and that they each took an undivided third part of the premises as tenant in common with their father.

The decree should be, in all respects, affirmed.

The decree of the Chancellor was affirmed by the following vote:

*For affirmance*—BEASLEY, C. J., ELMER, FORT, HAINES, KENNEDY, OGDEN, VAN DYKE, WALES.   8.

*For reversal*—CLEMENT, VREDENBURGH.   2.