In the matter of the estate of CAROLINE FISLER, deceased.

[Argued October 26th, 1942. Decided March 11th, 1943.]

*Mr. Raymond Saltzman,* for the appellant, Barnard Lorence.

*Mr. Richardson A. Roberts,* for the respondent Charles Wesley Keeler.

*Mr. Charles H. Stevens,* for the respondents Melissa Keeler Gohagan and Henrietta H. Keeler, guardian *ad litem* of Elizabeth M. Keeler, Alice C. Keeler and Jean C. Keeler.

The opinion of the court was delivered by

HEHER, J.

We are in accord with the conclusion of the learned Vice-Ordinary that Barnard Lorence, the adopted child of the testatrix' great grandniece, Alice Keeler Lorence, is not entitled under the will to share in the trust *corpus* in substitution for his mother as her "lawful issue." The opinion in this behalf is well-reasoned and altogether sufficient.

While ever controlled by the context, the word "issue" signifies, *prima facie,* "heirs of the body;" and the statute ordains that an adopted child "shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the collateral kindred of such adopting parent or parents by right of representation." *R. S. 1937, 9:3-9.* The question here is essentially one of intent; and there is no indication whatever in the testament that the testatrix designed, by the use of the term "lawful issue," to include those not of the blood among the objects of her bounty. The adoption took place some twenty-three years after her death.

*Book's Case, 90 N. J. Eq. 549,* is not controlling. There, the question considered was the legal relation of an adopted child to the adoptive parent as respects the provision of section 20 of the old Wills Act (*Comp. Stat. 1910 p. 5865; R. S. 1937, 3:2-15*); and the determination is obviously of no avail in the search for the intention of a testator who was a stranger to the adoption.

But we do not concur in the Vice-Ordinary's view that the four children of Charles Wesley Keeler are entitled to share in this estate in remainder equally with their father as the "lawful issue" of the equitable life tenant.

The judicial interpretative function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances, and effectuate it. If the testamentary purpose is revealed by clear and unequivocal terms, there is no room for construction. Unless a contrary usage is evident from the context, the words of the testament are to be given their primary or ordinary sense. And technical uses and rules will not be permitted to subvert the obvious intention. Canons of construction are in aid of the testamentary intent; and they have no bearing where the testator's design is declared in certain and unambiguous terms. The intention disclosed by the will in its entirety controls phraseology which, taken alone, would have a definite legal meaning. *Dennis v. Dennis, 86 N. J. Eq. 423.*

If not restrained by the context, the word "issue" is synonymous with descendants. It is *nomen generalissimum;* and,

in its primary, technical sense, it signifies grandchildren and all remoter descendants, and the distribution is *per capita* and not *per stirpes*. *Weehawken Ferry Co.* v. *Sisson, 17 N. J. Eq. 475; Dennis* v. *Dennis, supra; Coyle* v. *Coyle, 73 N. J. Eq. 528; Inglis* v. *McCook, 68 N. J. Eq. 27.* It is a rule of construction designed to advance and not defeat the testamentary object. If there be nothing more in a will touching the construction of the term "issue" than a "direction that the issue are to take the shares of their parents, that is enough to confine the general meaning of the word 'issue' to the particular meaning of children of that parent." *Pruen* v. *Osborn, 11 Sim. 132.* To the same effect is *Lehigh* v. *Norbury, 13 Ves. 340.* See, also, *Sibley* v. *Perry, 7 Ves. 522.*

Here, the testamentary expression is free of ambiguity. The trust estate comprises corporate capital stock. The direction was that the income be paid to the testatrix' grandniece, Eliza Mulford Keeler, during the term of her natural life, and that, upon her death, the shares "go to and be enjoyed by the lawful issue" of the equitable life tenant "in equal parts share and share alike, and if any of such issue be then deceased, leaving lawful issue, such issue" shall "take their parents share * * *." This language admits of no reasonable doubt of the purpose to exclude the descendants of any living stirps. Its normal and natural significance is that the grandniece's children shall divide the trust *corpus* equally, the children of a deceased child to take their parent's distributive share. This provision for representation of a deceased child constitutes a qualification of the antecedent term "issue." These are plainly words of limitation of the class to the children of the life tenant. The design was a stirpital disposition. *Inglis* v. *McCoy, supra; Coyle* v. *Coyle, supra; Dennis* v. *Dennis, supra; Skinner* v. *Boyd, 98 N. J. Eq. 55; affirmed, 100 N. J. Eq. 355; Pierson* v. *Jones, 108 N. J. Eq. 453; affirmed, 111 N. J. Eq. 357.* Consideration of the expression itself leaves one with the distinct impression that such was the testamentary scheme; and this, as we have said, is the touchstone of construction.

If the word "issue," referring to the first takers, be given the broader meaning of descendants, then it would be all-

inclusive in respect of lineal descendants, and the clause providing for representation of a deceased child would be devoid of rational meaning. The will was drafted by experienced counsel; and it is to be presumed that this provision was used purposefully. *Swetland* v. *Swetland, 100 N. J. Eq. 196; affirmed, 102 N. J. Eq. 294; Skinner* v. *Boyd, supra.* It is also of significance that the words "issue" and "lawful issue" were used without modification in connection with several other bequests to define a class of takers by substitution, while in another the same words of limitation were employed. This is indicative of a discrimination in the use of words that serves to emphasize rather than negative the intentional employment of the word "issue" in the restricted sense of children in creating the class of first takers under the particular bequest.

The illogic of the converse of this interpretation is exemplified by the argument adduced by respondents. It is maintained that the "persons who are to take in the first instance are the lawful issue" of testatrix' grandniece, "and the subsequent issue referred to as taking by substitution are the issue or children of the life tenant's lawful issue;" that the "word 'issue' which is thus modified is the issue of the lawful issue" of the life tenant; that "the parents referred to * * * were the lawful issue of the life tenant," and it is "their issue that is modified and restricted by the subsequent phrase to children;" that the "second use of the word 'issue' would, under our decisions, probably be restricted to mean children. but there is no reason to believe that there was any intention to carry that restriction one step further back and require the first use of the word issue to be interpreted as meaning children only;" that in the case of *Dennis* v. *Dennis, supra,* the first takers "were the sons of the testator," while here the first takers "were 'the lawful issue of the life tenant' and not her sons or her children;" and that a distinction is to be made between a gift "to a definite person or a definite restricted class of persons" and "an indefinite class such as" in the case at hand, "where the parent referred to is the lawful issue of the life tenant."

Respondents thereby make reference to but one facet of

the canon of construction by which the term "issue," used in collocation with the word "parent," nothing else appearing, is deemed to have been used in the restricted sense of children to the exclusion of grandchildren. And it plainly is at odds with their line of reasoning. Manifestly, the argument concedes a modification of the technical usage of the expression "lawful issue;" and, moreover, a provision that children of a deceased child shall take their parent's share is of necessity exclusive of the children of a living child in the delimitation of the class of takers. The intent so to limit the class of first takers must be effectuated. If the interpretation thus advanced be accepted, then the life tenant's descendants would constitute the class, and the provision for a deceased child's issue taking by representation would be ineffectual. Such would be an arbitrary application of a rule of construction in violation of the plain letter and spirit of the testament.

Yet the decree must be affirmed *in toto*. Although he contended in the Prerogative Court that the term "lawful issue" should not be given its primary, technical meaning, respondent Charles Wesley Keeler has not taken an appeal from the decree; and, since the adopted child has no interest in the estate in remainder, he is in no sense prejudiced by this particular provision. He would, of course, suffer harm only in the event he were entitled to share in the trust fund.

Let the decree be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, HEHER, PORTER, COLIE, DEAR, WELLS, THOMPSON, JJ. 10.

*For reversal*—DONGES, PERSKIE, RAFFERTY, HAGUE, JJ. 4.