IN THE MATTER OF THE ESTATE OF JAMES MOSES, DECEASED, LATE OF THE BOROUGH OF SPRING LAKE, MONMOUTH COUNTY, NEW JERSEY, LAURA M. BRINTON AND ETHEL R. MERRILL, INDIVIDUALLY AND AS TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF JAMES MOSES, DECEASED, PLAINTIFFS-RESPONDENTS, AND LYDIA MERRILL FRITZ, MARY WHITE WATKINS, ELEANOR CHAMBERLIN, EDWARD M. CHAMBERLIN AND LAURA CHAMBERLIN CAMPBELL, DEFENDANTS-RESPONDENTS, AND JOAN ISELIN HYDE, DEFENDANT-RESPONDENT, v. PETER MERRILL WATKINS, DEFENDANT-RESPONDENT, AND ERIC WATKINS *ET ALS.*, INFANTS, DEFENDANTS-APPELLANTS.

Argued April 25, 1960—Decided May 23, 1960.

*Mr. Robert V. Carton* argued the cause for the appellants (*Messrs. Durand, Ivins and Carton,* attorneys).

*Mr. Arnold Tulp* argued the cause for the defendants-respondents.

*Mr. Ralph E. Lum, Jr.,* argued the cause for the plaintiffs-respondents (*Messrs. Lum, Fairlie and Foster,* attorneys).

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Sullivan in the court below.

PROCTOR, J. (dissenting in part). I agree with the statement contained in the opinion of the Appellate Division which has been adopted by the majority:

"Prior to 1952 it was settled law that the unqualified word 'issue' in a will signified progeny to the remotest degree and carried with it a rebuttable presumption that the distribution of a testamentary gift should be *per capita. Plainfield Trust Co. v. Hagedorn,* 28

*N. J.* 483 (1958). The term 'issue' is generally held to be synonymous with the term 'descendants.' *Sanford v. Kaercher,* 126 *N. J. Eq.* 391 (*Ch.* 1939); *In re Fisler's Estate,* 133 *N. J. Eq.* 421 (*E. & A.* 1942); *Walsh v. Hulse,* 23 *N. J. Super.* 573 (*Ch. Div.* 1952)."

Unlike the majority, however, I cannot find any language in the *corpus* distribution provisions of the will to rebut the long recognized presumption that the words "issue" and "descendants" in a testamentary gift signify a *per capita* distribution. The will in the present case was executed in 1918. At that time the law was the same as that described in the quotation above. *Dennis v. Dennis,* 86 *N. J. Eq.* 423 (*E. & A.* 1916); *Weehawken Ferry Co. v. Sisson,* 17 *N. J. Eq.* 475 (*E. & A.* 1864). And we must assume that the scrivener, and in turn the testator, was cognizant of the settled law, and used the word "descendants" with knowledge of the meaning the cases had attached to it.

The fact that the will is "informal in its phraseology" is not significant. The will was drawn by a lawyer and the words "issue" and "descendants" are lawyers' words of art; "there is therefore a judicial bias that a scrivener employs [them] in [their] precise sense." *Plainfield Trust Co. v. Hagedorn,* 28 *N. J.* 483, at *page* 489 (1958). And even if the word "descendants" were not used as a word of art, its common lay definition is the same as that in the law. *Webster's New International Dictionary* (*2d ed. Unabridged,* 1959). An examination of the provisions of the will reveals that when the scrivener wanted to make a stirpital distribution he was capable of doing so. Thus in the distribution of trust income he provided in subparagraph 2 of paragraph "Third" that the testator's daughters should share equally, and if one of them should die leaving issue the latter would take "the part the mother would have been entitled to if living." Clearly, the word "issue" in this provision is restricted by its connection with the word "mother," and a stirpital distribution is indicated. *In re Fisler's Estate,* 133 *N. J. Eq.* 421, at *page* 424 (*E. & A.* 1943). The trial

court so held and there was no appeal from that determination.

How different are the words used to control the distribution of *corpus*: "One equal part thereof, I give to each of my then living daughters, and one equal part in equal shares to the descendants of any deceased daughter." There are no words here indicating that "descendants" should have any other than its normally accepted meaning. There is no restriction of the term by a connection with the word "mother." And there is no reason to be gathered from the will why the testator would have desired such a restriction. It also should be noted that the scrivener, after having used the word "issue" in a qualified sense in providing for income distribution, shifted to the word "descendants" when providing for *corpus* distribution and used that word without any qualification.

The opinion adopted by the majority recognizes the intent expressed by the provision of the will distributing income, and also recognizes that the provision dealing with *corpus* is put in different terms. The opinion concludes:

"The fact that the will uses different phraseology in disposing of the trust income merely points up the decedent's use of a term in other than its exact meaning."

I think that a more natural conclusion from this difference in wording is that a different result was intended. I see no reason to conclude that the scrivener, once having found a way to provide stirpital distribution of income, would have abandoned it and then used, to provide stirpital distribution of *corpus,* an expression that had been construed in the cases to signify a *per capita* distribution.

In the present case I cannot see why the word "descendants" should not be given its presumptive legal meaning.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, HALL and SCHETTINO—6.

*For reversal*—Justice PROCTOR—1.