Stoutenburgh v. Moore.

CARRIE BELLE STOUTENBURGH

*v.*

GEORGE D. G. MOORE, admr., et al.

A testator provided "all the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath the income to my two sons, Robert and Edward, to be equally divided between them during their lives, *and at their death, to be equally divided between my grandchildren,* to them, their heirs and assigns." The estate consisted of both real and personal property. He had but the two sons living at the time of making the will. They were both married, and both survived him. Edward is now dead, leaving a widow and one child. Robert survives and has four children.—*Held,*

(1) That upon the death of Edward his child was entitled to a moiety of the estate, absolutely; that Robert was entitled, during his lifetime, to the income of the other moiety, which, at his death, should be divided equally among his children.

(2) That the trust created by the will, to invest the residue, to pay over the interest, to sell and convey any or all of the real estate at discretion, and to keep it in repair, is an active one and does not devolve on an administrator with the will annexed.

Bill for construction of will.   On final hearing.

*Mr. John Whitehead,* for complainant.

*Mr. John W. Taylor,* for defendants.

THE CHANCELLOR.

Robert C. Stoutenburgh, deceased, late of the city of Newark, by his will, provided as follows :

" All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath the income to my two sons, Robert and Edward R., to be equally divided between them during their lives, and at their death, to be equally divided between my grandchildren, to them, their heirs and assigns; this provision being intended to take the place of any division or provision for them heretofore made or proposed by me."

The testator's estate consisted of both real and personal property. He had but the two children living at the time of making the will. They were both married. Both survived him. Edward is dead. He left a widow and one child, the complainant. Robert survives and has four children. The questions presented are, What is the interest of Robert in the residue, and what the interest of the grandchildren of the testator therein ?

NOTE.—A gift of *personal* property to two or more, constitutes a joint tenancy, and is not within the statute requiring express words to create a joint tenancy (*Rev. p. 167 ¿ 78*), *Putnam* v. *Putnam, 4 Bradf. 308 ; De Camp* v. *Hall, 42 Vt. 483 ; Gilbert* v. *Richards, 7 Vt. 203 ; Freeman on Partition ¿¿ 23, 41 ; Crossfield* v. *Such, 22 E. L. & Eq. 555 ;* see *Stevens* v. *Bowers, 1 Harr. 16 ; Lippincott* v. *Stokes, 2 Hal. Ch. 122.*

As to several mortgagees, see *Freeman on Partition ¿ 42 ; 1 Jones on Mort. ¿¿ 35, 704;* also, *Kinsley* v. *Abbott, 19 Me. 430 ; Lannay* v. *Wilson, 30 Md. 536.*

In *Slater* v. *Carew, 2 Mod. 19*, the condition of a bond was to pay to Thomas and Dorothy, his wife, during their two lives. On the death of the husband, the payment was held not to continue to the wife.

In *Farrington's Case, 1 Dyer 67 a*, a lease for years was made to two, provided that " if the said lessees die within the term it shall cease." The tenants partitioned, and one of them aliened his part and died.—*Held*, his grantee should hold during the life of the survivor.

In *Douglas* v. *Parsons, 22 Ohio St. 526*, on an agreement to pay R. A. G. and A. G., his wife, $66 annually, during their natural lives, the wife surviving was held entitled to the annuity as long as she lived.

In *Merrill* v. *Bickford, 65 Me. 118*, an annuity payable to T. during the natural lives of T. and his present wife, was held to continue on the death of T., leaving his " present" wife surviving, but not to be payable to her.

In *Townley* v. *Bolton, 1 Myl. & K. 148*, a testatrix gave £50 to her sister and her said sister's husband, for their joint lives, and after their decease to her nephew. The husband survived the sister, and was held entitled to the £50 for his life.

Stoutenburgh *v.* Moore.

Robert claims that he is entitled, by virtue of an implied cross-remainder, to the whole of the income for his life, and that the residue is not divisible until his death; and his children claim that whenever it is divided, it is to be divided, *per capita,* among all the grandchildren—his children and the child of his brother Edward. On behalf of the complainant, the child of Edward, it is claimed that the gift to Robert was only of half of the income of the residue, in any event, and that on the death of Edward the residue was divisible into two shares, one of which went at once to her, and that on the death of Robert the other share will go to his children.

The testator, by the will, gave the income of the residue to his two sons, to be equally divided between them during their lives. This made them tenants in common of the income, and they had no right of survivorship. *Woolston* v. *Beck, 7 Stew. Eq. 74; Wills* v. *Wills, L. R. (20 Eq.) 342.* Our statute provides that no estate, after the passing of the act (February 4th, 1812) shall be

In *McDermott* v. *Wallace, 5 Beav. 142,* under a gift to A and B of the annual sum of £12, to be equally divided during their lives, after which to go to C—*Held,* that B surviving A for ten years was entitled to the £12 during that time.

In *Smith* v. *Oakes, 14 Sim. 122,* an annuity was given to a husband and wife, during their joint and natural lives; the husband surviving was held entitled for his life.

In *Jackson* v. *Luquere, 5 Cow. 221,* under a devise to two daughters, "to be equally divided between them, share and share alike, and to be to them for and during their natural life, and after their death then to be to their and each of their children, and to be divided between them, share and share alike" —*Held,* on the death of one daughter, that her share vested in her children immediately, *per stirpes.*

In *Brudnell's Case, 5 Co. 9,* it was resolved that if a lease be made to A during the lives of B and C, and B die, A shall hold during C's lifetime. Also, *Day* v. *Day, Kay 703.*

In *Malcomb* v. *Martin, 3 Bro. C. C. 51,* the gift was to the children of J. G. and Mrs. L. for life, and then the principal to be divided among the grandchildren of J. G. and Mrs. L. J. G. died before the testator, leaving only grandchildren—*Held,* that the children of Mrs. L. took the entire interest during their lives.

In *Pearce* v. *Edmeades, 3 Y. & C. Exch. 246,* the gift was to E. and G. during their *respective* lives in equal shares, and after the decease of the said E. and G. unto and between the children of E. and G., and it was held that G., who

considered and adjudged to be an estate in joint tenancy, except it be expressly set forth in the grant or devise creating such estate that it is the intention of the parties to create an estate in joint tenancy, and not an estate of tenancy in common, any law, usage or decision theretofore made to the contrary notwithstanding. *Rev. p. 167.* Neither of the sons had a right, under the will, to more than one-half of the income in any event, and when one of them died the principal was to be divided, for I am of opinion that by the term "at their death" the testator meant at the death of them respectively, not at the death of the survivor.

It is urged on behalf of Robert's children that the testator having designated the persons who are to take the residue as his grandchildren—by their relationship to him—all those persons who are within the description are, by the rules of construction, entitled to take it equally. But the rules of construction must give way to the evidence of a contrary intention. If the testator intended (as I think he did) that at the death of one of his sons

survived E., was entitled to the whole interest during her lifetime. See *Doe* v. *Royle, 13 Q. B. 100.*

In *Taniere* v. *Pearkes, 2 S. & S. 383,* under a legacy of £600 to F., and at her death to her two daughters in equal shares, and at their death to their children; one of the daughters having died without children—*Held,* that the children of the other daughter took only their mother's share.

In *Willes* v. *Douglas, 10 Beav. 47,* under a gift in trust, to be equally divided between A, B and C, separate from their husbands and for their sole use, and at "their" decease to be divided amongst "their" daughters—*Held,* that on the several deaths of A, B and C, their respective shares went to their daughters.

In *Abrey* v. *Newman, 16 Beav. 431,* a bequest was to be equally divided between A and wife and B and wife, for the period of their natural lives, after which, to be equally divided between their children, "that is to say, the children of A and B above mentioned." A and his wife were both dead, leaving children, and B's wife was also dead, leaving B and children surviving. —*Held,* that on the death of A and his wife, their share was divisible among the children of A and B.

In *Drakeley's Estate, 19 Beav. 395,* a testator gave an annuity to A for life, and the income of the residue to B and C "during their lives as tenants in common," with gifts over to B and C's respective children after the deaths of A, B and C. After the death of B, C was held entitled to only one-half of the income of the residue for life.

In *Swan* v. *Holmes, 19 Beav. 471,* a bequest of the interest of one property was given to two sisters, and of another property to a female cousin, and "in

Stoutenburgh *v.* Moore.

the residue should be divided, and the share of which the de-
cedent had the use go over at once to the persons for whom the
testator intended it, he must have intended that the residue be
divided among his grandchildren *per stirpes*, for all of his grand-
children might not then have been born, and it could not be
known how many there would be until the death of his surviving
son.

The design of the testator and the scheme of the will, were to
provide, in the first place, for his sons for life, and then, as they
should die, for their respective families of children. He does
not say that on the death of one of his sons the share of the de-
cedent shall go to all of his, the testator's, grandchildren, but
" at their " (his sons') " death," the residue is to be divided be-
tween his grandchildren. He certainly intended that at the
respective deaths of his sons the shares of the residue, of which
he gave them respectively the income, should go over; for he
directs that " at their death," by which he meant their respective

case of the death of the above three females," over.—*Held*, that the gift over
took effect on the death of each female.

In *Sarel* v. *Sarel, 23 Beav. 87,* under a bequest of a moiety of a residue to A
for life, and of the other moiety to B for life, "and from, and immediately
after the decease of A and B," to stand possessed " of all my personal estate,"
in trust for eight grandchildren, on the death of A, leaving B still living—
*Held*, that A's moiety became divisible among the grandchildren. Also,
*Turner* v. *Whittaker, Id. 196 ; Archer* v. *Legg, 31 Beav. 187 ; Bryan* v. *Twigg,
L. R. (3 Ch. App.) 183.*

In *Ewington* v. *Fenn, 16 Jur. 398,* under a bequest of personalty to trustees,
to pay the income to A and B, for their lives, and after the decease and failure
of issue of A and B, to continue the payments to any husbands A and B might
respectively have, during the life of such husband, and after the respective
husbands' deaths, then the whole to C, A died without leaving a husband or
issue.—*Held*, that C took A's share immediately.

In *Larenck's Estate, 18 Jur. 304,* J. L. gave to his niece, C. B., and his
nephew, J. T., all his houses &c., " each to enjoy one-half during their lives,
and at their decease, the said premises to go to their children." J. L. died in
1786 and J. T. died in 1804, without children and intestate, leaving C. B., his
own and also J. L.'s heir-at-law. C. B. had thirteen children, of whom six
survived her. She devised all her interest in the premises to her daughter,
J. B.—*Held*, that C. B.'s children took her moiety, and her devisee, J. B., took
J. T.'s moiety which came to C. B. as J. T.'s heir-at-law.

In *Wills* v. *Wills, L. R. (20 Eq.) 342,* under a bequest of residue, the interest
thereof to be paid to C. and J., equally, for their lives, and at their death,

deaths, the residue shall be divided between his grandchildren. If it be suggested that he may have intended that from the death of one of his sons, one-half of the residue shall be kept invested until the death of the survivor, and the income paid until that event to the grandchildren in equal shares—a provision which would give to the surviving son one-half of the income of the residue for his life, and (as matters now stand) until his death to his children in their own right, four-fifths of the other half, and the remaining fifth to the child of the decedent—it is enough to say that there is no evidence of an intention to make any such provision. If the residue is to be divided on the death of the first decedent, and one-half is to be held to await the death of the survivor before any distribution is made, then the decedent's child will be left without any provision whatever until the death of her uncle, whom, of course, she may not survive. The testator did not contemplate any such result. He, of course, did not suppose that both of his sons would die at the same moment of time, and he therefore contemplated a survivorship. He intended to divide the residue of his estate between his sons, giving to each the use of half for life; the share of each to go, at his death, to his children, to whom he refers, not by their relationship to

the principal to be divided between the children of C. and J.—*Held,* that the words " at their death," meant at their respective deaths, and that the principal of C.'s moiety, at C.'s death, went to his children.

In *Woolston* v. *Beck, 7 Stew. Eq. 74,* a testator gave the use of his farm to his two daughters for life, S. to have two-thirds of the income, and K. one-third, " and after the decease of my two daughters," to their children in fee. S. died, leaving children.—*Held,* that K. was entitled to only one-third of the income, and S.'s children to the possession of two-thirds of the remainder.

In *Putnam* v. *Gleason, 99 Mass. 454,* a testator devised "to my daughters P. and G., for the term of their natural lives, all my real estate, to be held by them to their own use and behoof during life, as tenants in common, and at their death to their heirs and assigns."—*Held,* that the remainder in G's interest vested at her death in her heirs-at-law. See *Briggs* v. *Wade, 124 Mass. 380.*

In *Vreeland* v. *Van Ryper, 2 C. E. Gr. 133,* under a devise : " I do give the residue of my real estate to my children, share and share alike; but the shares which may fall to my sons George and Michael I do give to them only during their natural lives, and after their death, to go to their children, share and share alike " &c. George died leaving no issue.—*Held,* that testator died intestate as to his share. See, further, *Freem. on Partition §§ 23–28.*—REP.

his sons, but by their relationship to himself. Had he intended that on the death of one of his sons the survivor should have the income of the whole of the residue, and the child or children of he decedent nothing until the death of the surviving son, he most probably would have said so. It is equally reasonable to presume that if he had intended that on the death of one of his sons there should he a division of one-half of the residue among all his grandchildren then living, he would have said so. He surely never intended that the children of the first decedent should not only be deprived of the benefit of their father's share of the income by his death, but of all benefit of his estate until the death of their uncle. Nor is the use of the word "between," in this will, without significance. The language is, "and at their death to be equally divided between" (not among) "my grand-children." The word "between" is commonly used in reference to two only, and there is some evidence in the use of the word here of the intention to divide between two families of children. It is as if the testator had said, I give the income of the residue to my two sons for life, to be equally divided between them, and when they die the principal is to be equally divided between their families of children. This case differs in no material respect from the case of *Wills* v. *Wills*, above cited. There there was a bequest of the residue, the interest thereof to be paid to the testator's sons, Charles and John, equally, for their natural lives, and at their death the principal to be divided equally between the children of Charles and John. The testator died, leaving the two sons surviving him. One of them died, leaving five children. The other survived, and the question was between the children of the two as to their respective interests in the moiety to the income whereof the deceased son was entitled during his life. The master of the rolls, Sir George Jessel, held that the words "at their death," meant at their respective deaths, and that on the death of one son the moiety to the interest of which he had been entitled, became divisible among his children. The only difference between the case in hand and that case is, that here the testator provides for the division of the principal, not between the children of his sons, as in that case, but between

Stoutenburgh v. Moore.

his grandchildren. In this case, however, the testator had no grandchildren, except the children of these two sons, nor any other living children, except those two sons. This difference between the two cases is not enough to constitute a distinction. In *Loring* v. *Coolidge, 99 Mass. 191,* cited by the defendant's counsel, where a testatrix gave the income of the residue equally to her brother and sister during their natural lives, and at their death to her nephews and nieces them surviving; and the brother died after the death of the testatrix, leaving the sister surviving, it was held that the whole income of the residue was payable after the death of the brother to the sister until her death; and that the gift over in remainder to the nephews and nieces, was not to take effect until her death, and that the nephews and nieces then took *per capita.* In that case the primary provision of the gift of the income was not to the testatrix's children, but to her brother and sister, and none of the nephews and nieces, to whom the principal was given, were the children of the brother or sister. The court says that the agreed fact that none of the nephews or nieces were children of either of the beneficiaries for life, tended to confirm the interpretation that the principal was to be divided *per capita* among the nephews and nieces, as in accordance with the probable intent of the testatrix. If the fact had been that the nephews and nieces, among whom the division was to be made, were the children of the beneficiaries for life, it would certainly have been a circumstance worthy of being taken into consideration in ascertaining the probable intention of the testatrix in the provision for the distribution of the principal, and I think that the fact that the grandchildren, to whom the *corpus* of the residue is given in this case, are none other than the children of the two sons, is of importance in determining the intention of the testator as to the division of the residue " between " his grandchildren. I am clearly of opinion that the testator did not intend to give to the surviving son the income of the whole of the residue for his life, but intended that after the death of his brother he should still have only the income of one-half, and that, upon the death of the first decedent, the principal should be divided, and the decedent's child or children take

one-half of it; and that on the death of the survivor, his children should take the other. The testator has expressed his wishes with great brevity and conciseness, so much so as, perhaps, to render his intention somewhat obscure. If it is doubtful whether he intended the distribution among his grandchildren to be *per stirpes* or *per capita*, the court should adopt a construction in favor of the former method, not only as being most probably in accordance with his intention, but also as being in accordance with the policy of the law. The residue should be divided as of the death of Edward, and one-half of it, with the interest thereon since his death, goes to the complainant.

Another question is propounded, viz., whether the trust created by the will can be executed by the administrator with the will annexed. The trust is an active one to invest the residue and pay over the interest, to sell and convey, at the discretion of the executors or the survivor of them, as they or he should think for the best interests of the estate, so much and such parts of the real estate as they or he should think best, and to keep the premises remaining unsold in good and sufficient repair. It does not devolve on the administrator. *Brush* v. *Young, 4 Dutch. 237; Lanning* v. *Sisters of St. Francis, 8 Stew. Eq. 392.*