JOB MALE, surviving executor of the will of JAMES ANDERSON, deceased,

*v.*

RICHARD S. WILLIAMS et al.

1. A testator bequeathed to M. J. A. $1,000 "to be put out at interest until her child or children" should become of age, adding: "But if the said M. J. A. die leaving no child or children, then the above legacy that was to have been equally divided amongst them with the interest thereon to be paid by my executors or their executors, administrators or assigns, unto the Trustees of the Orphans Asylum in the city of New York, for the use and benefit of said institution." He also devised and bequeathed the residue of his estate. M. J. A. was eleven years old when the will was made, and fourteen years of age and unmarried at the testator's death. She afterwards married and had six children, two of whom have died. Her husband is dead. Her youngest child has become of age. She is now sixty-eight years of age, and has experienced the physical change in women beyond which they do not bear children.—*Held*, (a) That each child of M. J. A. at birth took a vested interest in the legacy subject to its opening, from time to time, to let in brothers and sisters subsequently born. (b) That the interest upon the legacy will follow the *corpus*, as parcel of the gift. (c) That the word "leaving" in the provision for the contingency, upon the happening of which the legacy is to go over, is to be taken as equivalent in meaning to the words "having had," and hence, that at birth each child of M. J. A. took an indefeasible interest, which, at death before payment, would pass to personal representatives. (d) That it is established that M. J. A. will not have another child, and hence, that there is no reason why the legacy shall not be now paid.

2. The executors of the will put out at interest $1,000 according to the testator's direction, and one of them collected all the interest and applied it to his own use.—*Held*, that such executor will be charged interest upon each $1,000 of interest from the time of its reception, whether it be had from interest upon principal or from interest upon previously capitalized or accumulated interest.

3

Male *v.* Williams.

On bill, answers, replications and proofs.

*Mr. Craig A. Marsh,* for the complainant.

*Mr. M. Runyon,* for the defendant Sarah Stout.

*Mr. Washington B. Williams,* for Mary J. Williams and others.

THE CHANCELLOR.

James Anderson died in November, 1837, leaving a will which bears date on the 17th of April, 1834. The will was duly proved, before the surrogate of Monmouth county, in December, 1837, and the executors named in it, the complainant and William Glaze, assumed its execution.

· It contained, among other provisions, the following:

"I also give and bequeath unto the child or children of Mary J. Anderson, that she may have in marriage, she being a daughter of the late James Anderson, Jun., the granddaughter of my late brother, Peter Anderson, the sum of one thousand dollars to be put out at interest until her child or children come of age. But if the said Mary J. Anderson die and leaving no child or children, then the above legacy that was to have been equally divided amongst them with the interest thereon to be paid by my executors or their executors, administrators or assigns, unto the Trustees of the Orphans Asylum in the city of New York, for the use and benefit of said institution." * * *

"I also give and bequeath and devise unto my adopted daughter, Sarah Glaze, all and singular that may remain of my real and personal estate after the payment of all just debts, legacies and funeral expenses."

Mary J. Anderson was born on the 15th of May, 1823. On the 21st of December, 1847, she married George N. Williams, who died on the 4th of June, 1867. She has never married again. By her husband she had six children, the youngest of whom, at the commencement of this suit, was more than twenty-one years old. Four of these children are yet living, and, with their mother, are parties defendant in this suit. · Two of the children are dead, and their personal representatives have been made defendants in their stead. Sarah Glaze is the widow of

one Stout and a party to the suit. " The Trustees of the Orphans Asylum in the city of New York" is also a party defendant.

It is proved that about twenty years ago Mrs. Williams experienced the physical change of life beyond which women do not bear children.

In September, 1839, the executors of James Anderson's will, Male and Glaze, invested $1,000 to answer the legacy to the children of Mary Anderson, and they and the survivor of them kept that sum constantly invested at the highest legal rate of interest until shortly before the filing of the complainant's bill. The executor Glaze died in 1845. Male always collected the interest from the investment and used it, with his own moneys, for his individual purposes. It has not been directly shown that such use was productive of profit to him, nor, indeed, precisely what the use was.

Since the youngest child of Mrs. Williams has become of age, he has demanded payment of a portion of the legacy and accumulated interest. His demand suggests a number of questions, concerning which the complainant now seeks the court's direction.

First, whether the children's right to the legacy is not contingent upon their survival of their mother; then, whether a child of Mrs. Williams, hereafter to be born in marriage, will not take a share in the legacy; whether, regard being had to the age and physical condition of Mrs. Williams, the court will assume that she will not hereafter give birth to a child; whether the representatives of deceased children should share in the legacy; whether the interest, upon the amount of the legacy, is to be paid to the same persons as the principal, or whether it is to go into the residue of Mr. Anderson's estate and be paid to the residuary legatee, and in what manner the complainant is to be charged with respect to the interest he has received.

Where the duty of a trustee is involved in doubt, it is his right to ask and receive the aid and direction of a court of equity, to the extent that his present necessities may require. *Traphagen* v. *Levy, 18 Stew. Eq. 448.*

The present demand upon the complainant requires him to consider and determine the questions suggested, and entitles him, at this time, to the assistance of this court.

Then, first, what interest, if any, do the children of Mary J. Anderson take in the principal of the legacy?

When the will was made Mary Anderson was an unmarried girl eleven years old, and when the testator died she was still unmarried. The class of takers contemplated by the will, her children, then, were persons to come into existence after the testator's death.

It is a settled rule of construction, that where there is an immediate gift to children, it will mean the children in existence at the testator's death, provided there be such children in existence; but if there be no child or children, then *in esse*, the gift will embrace all the children who may subsequently come into being, by way of executory gift. *2 Wms. Ex. 1092; 2 Jarm. Wills (R. & T. ed.) 721; Theob. Wills 244.* And where the gift to children, as a class, is not immediate, the children in existence at the testator's death, if any, will take a vested interest, subject to open and let in children born before the period of distribution. *Ward* v. *Tomkins, 3 Stew. Eq. 3.*

Here the gift was immediate, but it was to a class that was not in existence at the testator's death. Its payment, inferentially, from the character of the class of takers and the direction to invest, was deferred till all of the class should be ascertained and arrive at the age of twenty-one years.

The postponement of the payment or distribution, however, did not prevent the vesting of the legacy. *Gifford* v. *Thorn, 1 Stock. 702; Clayton* v. *Somer's Exr., 12 C. E. Gr. 230; Howell* v. *Green, 2 Vr. 570; House* v. *Ewen, 10 Stew. Eq. 368; Acken* v. *Osborn, 18 Stew. Eq. 377; Neilson* v. *Bishop, 18 Stew. Eq. 473.* Each member of the class at birth, after the testator's death, took a vested interest subject to opening, from time to time, to let in members of the class who should be subsequently born.

The next question is, whether the same persons take the interest upon the legacy.

As the principal has been at interest more than fifty years, and interest upon interest is claimed, it is obvious that this question is of considerable pecuniary importance. The residuary legatee claims the interest under the well-settled general rule of construction, that where a legacy is given to one who is not a child of the testator and to whom the testator does not stand *in loco parentis*, payable at a particular time fixed by the testator, the legatee will not be entitled to interest on the legacy, whether the legacy be vested or not, except from the time designated for payment.    *Weatherly* v. *Kier, 11 Stew. Eq. 87; Davis* v. *Davis, 12 Stew. Eq. 13 ; 2 Wms. Ex. 1429.*

It is observed, however, that in the will under consideration, instead of allowing the legacy to remain with the residuary estate until it is payable, the testator has deliberately severed it from the residue and made special provision for its preservation and improvement. He has given it to a class, the children of Mary Anderson, and directed his executors, none of the takers being then in existence, to profitably invest it—" put it out at interest"—until the takers shall come into existence and reach a certain age, the time of payment. In such a case the investment is deemed to be for the benefit of the legatee, and the interest will follow the legacy. In *Dundas* v. *Wolfe Murray, 1 Hemm. & M. 425; S. C., 32 L. J. (N. S.) 151*, a testatrix directed the trustees of certain funds over which he had a power of appointment, from and immediately after her death, to stand possessed thereof upon trust to raise thereout £5,000, and to pay the same to the five children of her deceased sister in equal shares, the shares of sons to be paid at twenty-one, and the shares of daughters at twenty-one or marriage, and to apply the income arising from the residue of the trust funds, as the will mentioned ; and Vice-Chancellor Wood held that the legacy was vested, and that, as it was severed from the remainder of the trust funds, the legatees were entitled to the interest upon it. This case is cited, upon this very point, with approval by text-writers (*Theob. Wills (2d ed.) 141; 2 Wms. Ex. 1449*), and commends itself to me as a safe precedent.

But further light, upon the testator's intention with reference to this interest, is found in the provision for the contingency that may be occasioned by the failure of primary takers of the legacy. That provision is, "if the said Mary J. Anderson die and leaving no child or children, then the above legacy that was to have been equally divided amongst them with the interest thereon to be paid" over. It is observed that the meaning of the language "then the above legacy that was to have been equally divided amongst them with the interest thereon to be paid" &c., is ambiguous, in view of the fact that its punctuation would seem to indicate that the words "with interest thereon" are not to be regarded as parenthetical and descriptive of something to be added to the thing spoken of, but as descriptive of part of that very thing itself. If they are part of the description of the thing, then the testator clearly expresses his intention that the interest is to go to the primary legatees. But aside from this suggestion, the mere absence of express direction for the disposition of the interest, in case there should be children of Mary Anderson, and the subsequent provision that, in the event of failure of primary takers, the interest shall go over with the legacy, indicates that the testator did not think that the interest would go to the residuary legatee before the happening of the contingency. And his direction with reference to it upon the happening of the contingency, shows that he did not suppose that it would go to the residuary legatee as paid, and it is improbable that he contemplated that the interest should accumulate till the primary takers should be entitled to payment of the principal, and that then it should be paid to his residuary legatee. The bare statement of this latter proposition emphasizes the justness of the rule which I have determined to apply in the solution of this question—that where a fund is directed to be at once set apart from the rest of the testator's estate, for a gift payable in the future, its interest will follow the *corpus* as parcel of the gift.

The next question is, whether the interest of the children will be lost in case they all predecease their mother.

Male v. Williams.

In absence of any expression upon this subject in the will, the children once taking vested interests will not subsequently lose them by death before their mother. When the period of distribution arrives their personal representatives will be entitled to payment in their stead. But the will provides for a contingency, upon the happening of which the fund is to go in another direction. The provision is: "But if Mary J. Anderson die and leaving no child or children, then" the legacy shall go to an orphans asylum. Now, it is to be remembered that the will previously gave the legacy immediately to the children of Mary Anderson, inferentially postponing the payment till they should all be of age. It is plainly apparent, in view of this previous disposition, that if the testator's words concerning the contingency, be taken according to their ordinary and primary import, his expressions of intention, with reference to the legacy in question, are inconsistent. He would seemingly give immediately, pay with interest when the takers arrive at a certain age, but withdraw if one of them, at least, should not survive Mary Anderson, although, upon the happening of that event, the time for payment may be long past. The testator could not have intended this inconsistency. In cases of this kind, in order to maintain prior vested interests, courts have disregarded the literal meaning of words and have so construed the language of the will as to render the provisions of that instrument harmonious, justifying their action by the assumption that the particular terms were introduced by the testator's mistake, or ignorance of the force of words.

"If personal estate," said Mr. Hawkins (*Hawk. Wills 216*), "be given to the children of A, the shares to vest in them on attaining a given age or marriage, without reference to their surviving the parent, but there is a gift over on the death of A without 'leaving' a child or children, the word 'leaving' will be construed 'having' or 'having had' in order not to defeat the prior vested interest."

In *Theobald on Wills 532*, it is said, that the word "leaving," under such circumstances, will be taken as equivalent in mean-

ing to the words " without having had children who take vested interest."

The authorities sustaining these views are quite uniform. *Maitland* v. *Chalie*, *6 Mad. 243* ; *Marshal* v. *Hill*, *2 Mau. & Sel. 608* ; *Ex parte Hooper*, *1 Drew. 264, 21 L. J. Ch. 402* ; *Kennedy* v. *Sedgwick*, *3 Kay & J. 540* ; *Re Thompson's Trust*, *22 L. J. Ch. 273, 5 DeG. & S. 667, 5 DeG., M. & G. 280* ; *White* v. *Hill*, *4 Eq. Cas. Abr. 265* ; *Casamajor* v. *Strode*, *8 Jur. 14* ; *In re Brown's Trust*, *L. R.* (*16 Eq.*) *239* ; *Treharne* v. *Layton*, *L. R.* (*10 Q. B.*) *459* ; *White* v. *Hight*, *12 Ch. D. 751* ; *Dubois* v. *Ray*, *35 N. Y. 162* ; *Jarm. Wills* (*R. & T. ed.*) *683.*

I am fully satisfied that in the bequest before me the testator intended to use the word " leaving " in the sense of the words " having had," so that, according to his meaning, the contingency contemplated was the death of Mary Anderson without having had a child or children.

I am thus brought to the conclusion that each of the children of Mary Anderson, now Mrs. Williams, at his or her birth took an indefeasible interest in the legacy in question, and also in the accumulations of interest upon it, subject only to open and let in afterborn brothers and sisters to a share. It is clear that the representatives of deceased children take the shares of their respective testators or intestates. None of the beneficiaries are to be paid until all, if living, would have reached the age of twenty-one years.

All Mrs. Williams's children have reached the age of twenty-one years, and her physical condition, which might have been presumed from her age alone, precludes the possibility of her having another child. In the *Matter of Brown's Trust*, *L. R.* (*16 Eq.*) *239*, Vice-Chancellor Malins acted upon such a presumption where a woman was sixty-seven years old.

Under such circumstances no reason appears why the legacy, with its interest, should not now be paid.

It remains only to determine upon what principle the complainant must account for and pay interest upon the legacy.

Immediately after the investment of the legacy the annual interest was so small a sum that it was hardly possible for him

to securely invest it.   This fact, together with the circumstance that the will did not expressly direct the investment of accumulated interest, led him to use the money with his own, and, the habit of such use being formed, he heedlessly continued it, without perhaps realizing the growing proportions of the interest and fully ascertaining and appreciating his duty with reference to it.   It cannot be questioned that when $1,000 in interest had accumulated it could have been profitably and safely invested, and that then there was an end of excuse for not investing it. And that as each succeeding $1,000 was reached, a like investment could have been made.   It appears just that the complainant should be charged interest upon each $1,000 from the time of its reception, whether it was had from interest upon principal or from interest upon previously capitalized or accumulated interest.   The case of *Rapalje* v. *Hall, 1 Sandf.* (*N. Y.*) *Ch. 399,* is a precedent in point, which I shall follow.

At the commencement of this suit the complainant paid the amount of the legacy and the interest thereon, with interest upon each installment of interest received, from the date of reception, into court.   This payment will fall short of the amount with which he must be charged.   The account will be carried to the date of such payment into court, and upon the excess of the charges against the complainant, over the amount paid into court, he will pay simple interest.   Upon the sum paid into court he will not be charged interest.

I perceive no sufficient reason why the complainant shall not be allowed commissions as trustee.