FREDERICK S. DENNIS et al., trustees, &c., complainants-appellants,

*v.*

ALFRED L. PINNEO DENNIS et al., defendants-respondents.

[Argued June 28th, 1916. Decided November 20th, 1916.]

On appeal of Mary Elizabeth Dennis et al. from a decree advised by Vice-Chancellor Howell, who filed the following opinion:

The bill in this case was filed to obtain a construction of the will of Alfred L. Dennis, late of Newark, who died December 8th, 1890. He left four sons and one daughter, whose names are, respectively, James S. Dennis, Frederick S. Dennis, Samuel S. Dennis, Warren E. Dennis and Mary Louise Bell. At the time of the testator's death his son James S. had one son, Alfred L. P. Dennis, the defendant, a grandson of the testator, and he in turn now has two infant daughters, born since the death of the testator. Frederick has no children. At the time of the testator's death Samuel had two children, Helen and James, and the third son has since been born. · Samuel has no grandchildren, neither has Warren. Mildred is not married. Mrs. Bell has three children, Alfred D., James C. and Samuel D. Her son Alfred D. has a son, Alfred D. Bell, Jr. All of them are parties to the suit.

The controversy which is raised by the bill is between Alfred L. P. Dennis, a grandchild of the testator, and his own two infant children, Elizabeth and Louise, who are great grandchildren of the testator. Their ancestor, James S. Dennis, who was a son of the testator, died March 21st, 1914, and the share of which he had the income for life is available for distribution, and the question is under the terms of the will whether the share of the testator's estate, which was enjoyed by James S. Dennis in his lifetime, shall go to James S. Dennis' son, Alfred L. P.

Dennis, or whether Alfred L. P. Dennis' two infant children take equally with their parent, so that each receives an undivided one-third of the James S. Dennis share. The portions of the will out of which this controversy arises are paragraphs 11 and 13, and the codicil dated April 15th, 1890. They are as follows:

"11. I hereby direct my executors to pay to each of my children, or the issue of each, if dead (the issue representing the parent) during the four years my estate is held in trust by my said executors, sums amounting yearly to three thousand dollars each."

"13. At the termination of the period of four years from my death as mentioned in the second clause foregoing, I hereby give, bequeath and devise all the rest, residue and remainder of my estate of every description, personal and real, unto all my children, living at my death, and the issue of any of my children who may have died before me, said children and issue to take share and share alike, the issue representing the parent, and entitled only to the share that the parent would be, if alive,—The right to each of said shares to become vested at my death, subject to the trust aforesaid, and two-thirds of the share of my daughter Mary Eliza, to be subject also to the further trust following— I direct that the said two-thirds of the share of my said daughter shall continue to be held and shall be held by my executors, the survivors and survivor of them, in trust for and during her natural life, and to pay the income and proceeds thereof when received unto her during that time, for her sole and separate use, and as her separate estate exclusively, and at her death the said two-thirds to be relieved from said trust, and go to her issue, to whom I then give, bequeath and devise the same, and in default of such issue at her death, I give, bequeath and devise the same to her next of kin and heirs. Nothing in this last trust contained shall affect the absolute right of my said daughter in and to the other one-third of her share."

#### CODICIL.

"Two-thirds part of the shares of the residue and remainder of my estate, personal and real, which in said Will I have given, bequeathed and devised unto my four sons respectively and their issue, as mentioned in the thirteenth paragraph thereof, I give, bequeath and devise, upon a like trust as that provided in said will for my daughter, the income and proceeds thereof when received, to be paid unto my said sons respectively during the natural life of each, and at the death of each, the said two-thirds to be relieved from said trust and go absolutely to the issue of the son so dying. The trustees of said two-thirds for either of my said sons shall be the remaining three of my sons, their survivors and survivor, and for that purpose, the two-thirds part aforesaid of either son, shall vest in the other three sons as trustees, their survivors and survivor. In case of default of issue at the death of any of my sons I give, bequeath and devise his said two-thirds part held in trust as aforesaid, to his next of kin and heirs, according to the nature of the estate, whether personal or real."

The dispute arises out of the interpretation which should be given to the word "issue" in the codicil. This instrument provides that "at the death of each, the said two-thirds to be relieved from said trust and go absolutely to the issue of the son so dying." Does the word "issue," as used by the testator, mean children, or does it mean descendants to the remotest degree? Is it 'to be divided *per capita* or *per stirpes?*

It seems to be well settled in this state that the word "issue," which is so indefinite and capable of so many interpretations, in its first and primary sense, means descendants and comprises objects of every degree. The court of errors and appeals, in *Weehawken Ferry Co.* v. *Sisson, 17 N. J. Eq. 486,* adopts the definition given by Mr. Jarman as follows: "When not restrained by the context (issue) is co-extensive and synonymous with descendants, comprehending objects of every degree, and here the distribution is *per capita* and not *per stirpes.*" And "where the description 'issue' is employed in a will as a word of purchase, it will, in its ordinary import, comprise all those who claim as descendants from or through the person to whose issue the bequest is made, *i. e.*, grandchildren and great grandchildren, as well as children; and in order to restrain this usual sense of the word, a clear intention must appear upon the will." *2 Will. Ex. 999.* See, also, *Ballantine* v. *DeCamp, 39 N. J. Eq. 87;* Coyle v. *Coyle, 73 N. J. Eq. 528.* This appears to be the universal interpretation. The *Matter of Farmers Loan and Trust Co., 213 N. Y. 168; Jackson* v. *Jackson, 153 Mass. 374; Ralph* v. *Carrick, L. R., 11 C. D. 873; 48 L. J. Ch. 801,* and in this interpretation all the text-books coincide. *Theob. Wills (1908) 318; 2 Jarm. Wills (6th English ed.) 1590.* See, also, *Davenport* v. *Hanbury, 3 Ves. 257; Gardn. Wills 435.* Applying the broad, general rule laid down by these authorities to the case in hand, we would have Alfred L. P. Dennis sharing with his two infant children in the final distribution of the portion of the testator's estate which has hitherto been enjoyed by James S. Dennis, their ancestor, as life tenant. Such will have to be the interpretation of the will in question unless we can find some expression in the document which indicates that the testator intended no such result, but that, on the contrary thereof, he

meant to make a stirpital distribution of his estate, and if such intention can be found within the four corners of the instrument, then it is quite clear that James S. Dennis' share would be distributed to Alfred L. P. Dennis alone, and that his children would be entitled to nothing as devisees under the will.

In my opinion, such an expression is found in the codicil and in the very sentence which provides for a distribution of the fund. By the original scheme of the will the whole of the estate of the testator was trusteed for a period of four years, at the termination of which period there was to be an equal distribution of the estate, the four male children taking their shares outright and the daughter being made a life tenant of two-thirds of another share with remainder to her children. The first indication of the desire of the testator for a stirpital division of his estate appears in the eleventh paragraph where he gives the sum of $3,000 each to his five children annually during the four years that the estate is held in trust, and in making this division the executors are to distribute to each of the children, or to the issue of each, if any are dead "the issue representing the parent," and this same intention is evidenced by a similar expression in the thirteenth paragraph which provides the original scheme for the division of the estate; then, at the end of four years, there was to be a division

"unto all my children, living at my death, and the issue of any of my children who may have died before me, said children and issue to take share and share alike, the issue representing the parent, and entitled only to the share that the parent would be, if alive."

Thus it appears that under the original scheme of the will there was a clearly-expressed intention on the part of the testator to treat the word "issue" as if it were "children," and to provide for a division per stirpes. The codicil, made several years after the making of the will, to my mind, gives forth the same intention. By it the testator abandoned his original idea of dividing his estate among his five children, trusteeing the daughter's share, and he made instead thereof a provision for trusteeing two-thirds of the whole estate, or each of the shares, during the lifetime of his several children, treating them all in the same manner in which he had treated his daughter under

his first scheme of distribution. By the codicil he gives, bequeaths and devises two-thirds part of the shares of the residue and remainder of the estate "upon a like trust as that provided in said will for my daughter, the income and proceeds thereof, when received, to be paid unto my said sons, respectively, during the natural life of each." And, in order that there might be no doubt about his intention, he provides "at the death of each (of his children) the said two-thirds to be relieved from said trust and go absolutely to the issue of the son so dying." And finally in the same codicil he provides for a default of issue at the death of any of his sons. In such case he gave his said two-thirds part, held in trust as aforesaid, to his next of kin and heirs, according to the nature of the estate, whether personal or real, indicating, conclusively, to my mind, that he had in contemplation a stirpital distribution of his estate, of the same stirpital character as that provided for by our statutes of descents and distributions. I do not see how there could be a clearer expression of an intention to divide *per stirpes*. I can think of no words which would make the provision more certain or more easily understood.

Up to this point I have endeavored to reach a conclusion from an examination of the will itself without resort to any of the many authorities which might be cited in favor of the view that I have taken. It appears to have been frequently held that where a "parent" of issue is spoken of the word is *primâ facie* restricted to children of the parent. It was so held in *Coyle* v. *Coyle, supra,* where the rule is stated and the authorities collected. See *Pruen* v. *Osborn, 11 Sim. 132.* There the testator bequeathed the residue of his estate to the children then living of B. and C., and the lawful issue then living of such of their children as were dead, as tenants in common, so, nevertheless, that such issue should, as amongst themselves, take as tenants in common, and *per stirpes* and not *per capita;* it being his intention that such issue should have only the shares which their respective parents would have been entitled to if living. It was held that the word "issue" must be taken in the restricted sense of "children." Vice-Chancellor Shadwell says: "Moreover, I am of the opinion that if there be nothing more in a will, or

other written instrument, whereby to construe the term 'issue' than a direction that the issue are to take the shares of their parents, that is enough to confine the general meaning of the word 'issue' to the particular meaning of children of that parent." And it was so held in *Leigh* v. *Norbury, 13 Ves. 340*. In *Sibley* v. *Perry, 7 Ves. 522*, Lord Eldon put the same construction on the word "issue" because he found that in a particular clause the use of the word "parent" restricted the meaning of the word "issue," and the same construction was adopted in a case which came before Sir William Grant at the rolls on the 2d of March, 1814. *Harrington* v. *Lawrence,* not reported. There, by an indenture, a fund was declared to be in trust for the children of a marriage, living at the death of the husband and wife, and the deed then provided that if any should die in the lifetime of the husband and wife leaving issue, such issue should take such share as their parent would have been entitled to in case he or she had survived the husband and wife. A grandchild of a child of the marriage was excluded." It may be said that the case of *Sibley* v. *Perry* has been much criticised (*Coyle* v. *Coyle, supra*), but it has been followed with very little, if any, diminution of its force as a precedent. In *Maynard* v. *Wright, 26 Bev. 285*, Sir John Romilly, M. R., says: "It is clear that the word 'issue' is *nomen generalissimum,* and that it includes the latest descendants unless its meaning be restricted and cut down by words to be found in the will. On the other hand, it is also clear that where issue are substituted for parent, the word 'issue' is restricted to the children of the parent spoken of. But this rule of construction may again be controlled by the general nature and scope of the whole will and by the use of the word 'issue' in other parts of the will which may enlarge this construction and restore the word to its original comprehensive meaning."

It was strongly argued on principle and authority that when the testator used the word "issue" in any particular sense in one part of the will, he must be held to have used the same word in the same sense in all other parts of the will. Unless there is something to indicate a contrary intention, I have no doubt of the proposition and agree entirely with the argument made on

behalf of Alfred L. P. Dennis on· this point. And I find, as a matter of fact, that in this case the testator did use the word "issue" in the same sense in every part of the will.

I· am, therefore, of the opinion that the testator used the word "issue" in the sense of "children," and that he meant to have his estate divided *per stirpes* and not *per capita.* This will result in a· decree giving the share in question to Alfred L. P. Dennis and excluding his .two children from participation therein.

*Mr. Charles B. Bradley,* for the appellants.

*Mr. John O. H. Pitney,* for the respondents.

PER CURIAM.

We conclude that the decree below should be affirmed, and substantially for the reasons contained in the opinion of the learned vice-chancellor, though we are hardly willing to concede that testator's intent could not have been expressed more certainly or intelligibly.

Appellants urge that the vice-chancellor did not allude to the decision in *Inglis* v. *McCook,* 68 N. J. Eq. 27, and that the decision in that case must be overruled in order to reach an affirmance herein.

Applying the fundamental rules that the testator's intention is to be gathered from a reading of the entire will, and that such intention, when ascertained, must control phraseology which taken alone would have a definite legal meaning, it was entirely open to the vice-chancellor to interpret the will in the case at bar as he did, without impugning the correctness of the result reached by Chancellor Magie in the *Inglis Case* respecting a different will.

The decree appealed from will be affirmed.

*For affirmance*—-THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS—12.

*For reversal*—None.