The testator, Henry Graves, died August 29th, 1906, leaving a will dated December 20th, 1904, which was admitted *Page 573 
to probate by the surrogate of Essex County on September 10th, 1906. Letters testamentary under said will were duly issued to the testator's sons, Henry Graves, Jr., and George Coe Graves, the executors and trustees therein named. The testator left him surviving his widow, Harriet Isabella Graves, four children, namely, Henry Graves, Jr., George Coe Graves, Edward H. Graves and Daisey B. Smith, and five grandchildren, namely, Henry Graves, 3d, Duncan Graves, Gwendolen Graves and George Coe Graves, 2d, children of Henry Graves, Jr., and Isabella G. Metcalf, daughter of Daisey B. Smith. After the testator's death, one other grandchild was born on March 17th, 1908, namely, Jean Stevenson Graves (now Jean Graves Brainard), daughter of Edward H. Graves. No other grandchildren have been born since that time.
The will gave to his sons, Henry Graves, Jr., and George Coe Graves, and his wife, Harriet Isabella Graves, his household furniture, personal effects and works of art, c., and the residue of his estate to trustees in trust under the provisions of Article Fourth of his will, which provided in part as follows:
"Fourth: — Inasmuch as my sons have already received from me sufficient capital to make them independent during their lifetime, it is my wish that the principal of my estate should remain intact, without depletion or distribution, for the benefit of my grand children and their families, and to that end, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, and wheresoever situate, unto my two sons Henry Graves, Junior, and George Coe Graves, their heirs and assigns forever in trust, nevertheless, to and for the following uses and purposes, that is to say: —
(Paragraphs a to c inclusive contain provisions as to the administration of the trust and are not reproduced.)
"d: — Out of the rents, issues, interest and income of my said principal estate, I direct my said trustees to pay unto my said wife, Harriet Isabella Graves, during her natural life, in lieu of all dower or further interest of any kind in my real estate, or claim upon my personal estate, the sum of Twenty Thousand Dollars, each and every year, in quarterly payments of Five Thousand Dollars each.
"e: — To divide the remaining income from time to time, into as many parts as there may then be children and grandchildren me surviving, and to pay one of such parts unto each of my said children and grandchildren during their natural life, annually, or at such periods as shall be most convenient to my said trustees; and in the *Page 574 
event of any of my grandchildren, being under the age of twenty-one years, to pay the share of the income which would have been such grandchild's to its guardian.
"f: — In the event of there being other children of my said children (that is, grandchildren), born subsequent to my decease, I direct my trustees to divide the annual income in such proportions that each child and grand child shall receive equal shares.
"g: — In the event of the decease of any one of my said grandchildren leaving lawful issue, them, her or him surviving, I direct my trustees to pay the share or portion of the income which would have belonged to the said grand child in equal shares, to his or her issue; and in the event of the decease of any one of the grandchildren, without leaving such issue him or her surviving then the share which had been his or hers, in life, shall be divided in equal shares among my other children and grand children then surviving.
"h: — Upon the death of my last surviving grand child to divide the principal of my said estate with all accumulations and increase thereof, to and among the issue of my said grand children, that is to say, among my great grand children, share and share alike, the issue of any deceased great grand child to receive the share its parent would have received if living, to have and to hold unto them, their heirs and assigns forever."
The trustees named in the will accepted and administered the trust until March 21st, 1922, when Henry Graves, 3d, one of the grandchildren, died, leaving him surviving three infant children who were great-grandchildren of the testator, namely, Mary Dickson Graves (now Mary Graves Haviland), who was born April 25th, 1919, Florence Barbara Graves (now Barbara Graves Jenks), who was born July 22d 1920, and Henry Dickson Graves, who was born September 17th, 1921, all of whom are now living. Thereafter, the trustees filed a bill of complaint in this court,Docket 51-679, for the purpose of obtaining a construction of the will and an adjudication as to the validity of the trusts thereby created. The widow of the testator and all of the children, grandchildren and great-grandchildren of the testator then in being, and the executor of the will of Henry Graves, 3d, were parties to the suit. After final hearing of the cause the late Chancellor Walker rendered an opinion, reported in 94 N.J. Eq. 268; 120 Atl. Rep. 420, which held that the trusts created by the will, other than the trust to provide an annuity for the testator's widow, violated the rule against perpetuities and were *Page 575 
wholly void; that the testator died intestate as to the entire residue of his estate, subject to the trust for the widow, and that such residue was distributable to the testator's next of kin, to wit, his four children. On March 20th, 1923, a final decree was entered in said cause in accordance with the Chancellor's opinion.
Appeal from that decree was taken to the Court of Errors and Appeals, but before the appeals were argued the parties negotiated a settlement of the litigation, which settlement was embodied in an agreement dated June 23d 1923, and which agreement of settlement is now submitted for construction in the present suit. On June 27th, 1923, the Chancellor made and entered a decree in said cause, pursuant to a petition of the guardianad litem for the infant parties, whereby the settlement agreement was declared to be for the best interests of the infants and was thereby approved, and execution thereof by the guardian ad litem was ratified and confirmed. The original executed settlement agreement was filed in and as a part of said cause in the Court of Chancery.
The agreement recites the proceedings in the Court of Chancery, the appeals from the final decree therein, the dismissal of the appeals without prejudice, the distaste of the parties for such litigation, and that the children of the testator were "willing and anxious to carry out the scheme of their father's will in so far as the same may be practicable, and in particular to make provision for his grandchildren and great-grandchildren in the manner and to the extent" thereinafter set forth. In the body of the agreement the consideration therefor was stated to be "in order to bring said litigation to an end and to carry out as far as may be the wishes of the said testator as indicated by his will and to make reasonable provision for the said grandchildren and great-grandchildren, and as a family settlement." By the agreement the parties transferred to Henry Graves, Jr., and George Coe Graves, as trustees, all their right, title, interest, claim and demand against the undistributed assets of the estate of the testator, in trust, to distribute accumulated extraordinary cash and stock dividends and accumulated ordinary *Page 576 
income in the manner therein provided, to pay all indebtedness, claims and demands against the trust estate or incurred by the executors and trustees under the testator's will, and to hold, manage and distribute the balance of the trust estate as provided in paragraph 2 (d) of the agreement as follows:
"(d) To have, hold and manage the rest, residue and remainder of said trust estate, and to sell, exchange, convey, invest and reinvest the same at such times, in such manner and on such terms as to them shall seem most expedient, and out of the rents, issues, interest and income thereof, to pay unto Harriet Isabella Graves, widow of the Testator, during her natural life, in lieu of all interest which she may have in the said trust estate, the sum of $20,000 each and every year, in quarterly payments of $5,000 each, and to divide, transfer, or pay over the rest, residue and remainder of said income to and among the children and grandchildren of the Testator, including grandchildren born subsequent to the date of this agreement per capita, during respective natural lives, or until the death of the last survivor of the children and grandchildren of the Testator in being at the date of this agreement. In the case of Henry Graves, 3d, a grandchild now deceased, and of the death of any other grandchild leaving lawful issue him or her surviving, the share or portion of the income which would have belonged to said grandchild had he or she lived shall be distributed in equal portions to his or her issue. But in case any one of said grandchildren shall die without leaving lawful issue him or her surviving, then the share which had been his or hers in life shall be distributed among the surviving children, grandchildren, and issue of deceased grandchildren of the Testator, in the same manner and proportions as it is provided that the balance of said income shall be divided among them respectively. Such payment shall be made semi-annually or at such periods as shall be most convenient to said trustees. Upon the death of the last survivor of the children and grandchildren of the Testator in being at the date of this instrument, the said trustees shall divide the principal of said trust estate, with all accumulations and increases thereof, to and among the great-grandchildren of the Testator, share and share alike, the issue of any deceased great-grandchild to receive the share its parent would have received if living, provided, however, that any grandchild born after the date of this agreement who shall have no children in being at the time of said distribution shall be considered as a great-grandchild and shall receive the same proportion of the corpus as the other great-grandchildren of the Testator. To have and to hold unto her, him, or their heirs, executors, administrators and assigns, forever."
The general outline of paragraph 2 (d) of the agreement and most of its language are substantially identical with *Page 577 
Article Fourth, paragraphs d to h, inclusive, of the testator's will. The important difference between the agreement and the will is that the agreement makes the corpus of the trust distributable upon the death of the last survivor of the testator's grandchildren in being at the date of the agreement, the result of which is to eliminate the lives of after-born grandchildren as lives measuring the duration of the trust and to cure the defect which made the testamentary trust invalid.
Since the execution of the settlement agreement some of its provisions have been considered in the cases of Graves v.Graves, 106 N.J. Eq. 85; 150 Atl. Rep. 11; affirmed, 107 N.J. Eq. 595; 154 Atl. Rep. 630, and Graves v. Graves, 115 N.J. Eq. 547; 171 Atl. Rep. 681.
The bill of complaint in the present case alleges the making of the settlement agreement and sets forth paragraph 2 (d) thereof in full. The bill further alleges that Harriet Isabella Graves, the widow of the testator, died on February 23d 1926; Edward H. Graves, a son of the testator, died on June 2d 1930; George Coe Graves, a son of the testator and one of the trustees, died on September 10th, 1932; and George Coe Graves, 2d, a grandson of the testator, died without issue on November 3d 1934; and that upon their respective deaths their interests in the income of the trusts thereafter accruing terminated; and that Henry Graves, Jr., the surviving trustee of the trust under the settlement agreement, was discharged by order of this court on June 14th, 1938, and Fidelity Union Trust Company, the complainant in the present suit, was duly appointed and qualified as substituted trustee in his place and stead.
The bill of complaint further alleges that there is doubt and uncertainty as to the proper construction of the following provision of the settlement agreement:
"* * * In the case of Henry Graves, 3d, a grandchild now deceased, and of the death of any other grandchild leaving lawful issue him or her surviving, the share or portion of the income which would have belonged to said grandchild had he or she lived shall be distributed in equal portions to his or her issue. * * *." *Page 578 
This doubt and uncertainty and the question with which the complainant is actually confronted arises out of the fact that each of the children of Henry Graves, 3d, deceased, now has living children. Mary Graves Haviland, a daughter of Henry Graves, 3d, has two children, namely, Dianne Sands Haviland, born October 4th, 1942, and Dickson G. Haviland, born April 8th, 1944. Barbara Graves Jenks, a daughter of Henry Graves, 3d, has two children, namely, Airell Blaine Jenks, born July 18th, 1941, and Sharon Lynne Jenks, born April 24th, 1943. Henry Dickson Graves, a son of Henry Graves, 3d, has two children, namely, Henry Dickson Graves, Jr., born July 27th, 1944, and Cheryl Dianne Graves, born July 1st, 1946.
So the question raised is as to the persons whom the parties to the settlement agreement intended to be included in the classes of issue of deceased grandchildren of said testator who are entitled to share in the income of said trust, and in particular whether the complainant should continue to distribute the share of the income of said trust to which Henry Graves, 3d, would be entitled if now living, to the said Mary Graves Haviland, Barbara Graves Jenks and Henry Dickson Graves, in equal shares notwithstanding the birth of their respective children, or whether such children are entitled to participate in the distribution of said share of the income of said trust from the respective dates of their births.
All of the children, grandchildren, great-grandchildren and great great-grandchildren of the testator, now in being have been made parties. All have appeared and filed answers in the suit. All the children, grandchildren and adult great-grandchildren are represented by their solicitor and counsel, and he has also been appointed by orders of this court guardian ad litem of the infant great-grandchildren. Since the interests of the great grandchildren and of the great great-grandchildren are conflicting, a separate guardian ad litem has been appointed to represent the great great-grandchildren, all of whom are infants.
The children, grandchildren and great-grandchildren take the position that the complainant has heretofore construed *Page 579 
the provision of the settlement agreement in question as indefeasibly vesting in the children of Henry Graves, 3d, deceased, the share of income Henry Graves, 3d, would have received had be continued to live, and that such construction is the correct and true meaning of such provision. They further say that Mary Graves Haviland, Barbara Graves Jenks and Henry Dickson Graves have a vested interest in said income which is not affected by the birth of issue of any of said children, and that by a proper construction of the settlement agreement the class of persons entitled to the share of income of any grandchild hereafter dying is fixed as of the date of death of such grandchild and that such class is the first or nearest class of issue of such deceased grandchild hereafter dying, and the said share of income is to be distributed to such class per stirpes
and is not distributable equally between all the issue of such deceased child, of varying degrees of relationship near and remote.
The infant great great-grandchildren of the testator take the position that all the issue of the deceased grandchildren of the testator, to the remotest degree, are entitled to participate in equal shares in the distribution of the income of the trust to which said deceased grandchild would be entitled if now living, and more particularly that the infant defendants Dianne Sands Haviland, Dickson G. Haviland, Airell Blaine Jenks, Sharon Lynne Jenks, Henry Dickson Graves, Jr., and Cheryl Dianne Graves are entitled to participate in equal shares with all other issue of Henry Graves, 3d, in the distribution of the income of said trust to which said Henry Graves, 3d, would be entitled if now living; and they say that in the event of the death hereafter of any other grandchild of the testator, the issue of such deceased grandchild to the remotest degree, whether then in being or born thereafter, would be entitled to participate in equal shares of the distribution of the income of such trust to which said deceased grandchild would be entitled if living.
The question for decision is whether the three children of Henry Graves, 3d, are entitled during their respective lives to the share of income to which he would be entitled if he *Page 580 
were now living, to the exclusion of their children, or whether their children and possibly more remote issue are entitled to participate with them in the distribution of that share of the income.
The settlement agreement when read in the light of the history which preceded its execution and comparing its provisions with the corresponding provisions of the testator's will make it clear that the object of the settlors of the settlement trust was to continue the general scheme of the will, eliminating therefrom the violation of the rule against perpetuities which had been adjudged to exist in the will. While some changes were made in the details of the testator's scheme, basically the scheme of the will was carried forward into the settlement agreement. The agreement recites that the children of the testator, who were in effect the real settlors of the trust, were "willing and anxious to carry out the scheme of their father's will in so far as the same may be practicable," and one consideration for execution of the agreement was stated to be "to carry out as far as may be the wishes of the said Testator as indicated by his will." The object of the settlors as stated and as implied from the circumstances was to adopt the intention of the testator as their own intention, except to the extent that the agreement made a different disposition of the trust property than the testator had made in his will.
In the agreement the provisions of the first clause of paragraph "g" of Article Fourth of the will were used with slight changes in the language of the will, the most important of which was to make special mention of Henry Graves, 3d, as a grandchild then deceased. Without such specific mention of a predeceased grandchild, the provision might have been construed to be prospective only and it would have been at least doubtful whether the issue of such grandchild would share in the income of the trust. Therefore express provision was made to include the issue of such deceased grandchild. The other changes are minor in character and were made in language which does not affect the description of the classes of substituted income beneficiaries, which in both the settlement agreement and the will are described as "issue" of *Page 581 
deceased grandchildren. Comparison of the two instruments demonstrates that the issue of Henry Graves, 3d, and the issue of any grandchildren thereafter dying were intended to receive under the agreement exactly the same interest in the income of the trust as had been given to them under the testator's will, and that issue of all deceased grandchildren were intended to be treated in the same manner as had been the case under the will. I conclude therefore that in the provision of the settlement agreement the word "issue" is used in the same sense as it is used in Article Fourth, paragraph "g" of the testator's will. Having so concluded, it is necessary to ascertain the meaning of the word "issue" as used in the will.
It is the rule that the will should be so construed as to effectuate the testator's intention as expressed in the instrument as a whole. Peer v. Jenkins, 102 N.J. Eq. 235;140 Atl. Rep. 413; Gluckman v. Roberson, 116 N.J. Eq. 531 (at p.537); Dennis v. Dennis, 86 N.J. Eq. 423; 99 Atl. Rep. 889; Inre Fisler, 133 N.J. Eq. 421; 30 Atl. Rep. 2d 894. In seeking the intention of the testator as expressed in the whole will it is a general rule of construction that the same words used in different parts of a will shall be presumed to be used always in the same sense.
Our courts have frequently been called upon to construe the word "issue" as used in various instruments, and the result of all the cases is concisely stated by Mr. Justice Heher in the case of In re Fisler, supra.
"If not restrained by the context, the word `issue' is synonymous with descendants. It is nomen generalissimum; and, in its primary, technical sense, it signifies grandchildren and all remoter descendants, and the distribution is per capita and not per stirpes. Weehawken Ferry Co. v. Sisson, 17 N.J. Eq. 475; Dennis v. Dennis, supra; Coyle v. Coyle, 73 N.J. Eq. 528; Inglis v. McCook, 68 N.J. Eq. 27. It is a rule of construction designed to advance and not defeat the testamentary object. If there be nothing more in a will touching the construction of the term `issue' than a `direction that the issue are to take the shares of their parents, that is enough *Page 582 
to confine the general meaning of the word "issue" to the particular meaning of children of that parent.' Pruen v.Osborn, 11 Sim. 132. To the same effect is Lehigh v.Norbury, 13 Ves. 340. See, also, Sibley v. Perry, 7 Ves.522."
The rule as to the meaning of the word "issue" as stated in the cited cases is divided into two general rules: first, that it means descendants of every degree, and second, that distribution is per capita rather than per stirpes. Both branches of the rule are subject to the same qualification, that a different result will be reached if such was the intention of the testator. In the present case if the word "issue" were to be treated as an isolated word without reference to the other provisions of the will, it might have the meaning attributed to it in the cited cases, but it cannot be treated as an isolated word and the question is whether a more restricted meaning must be attributed to the word, either as to the persons contemplated within the description or as to the manner of distribution, in order to carry out the plan and intention of the testator as expressed in the will as a whole.
In Stoutenburgh v. Moore, 37 N.J. Eq. 63; affirmed,38 N.J. Eq. 281, Chancellor Runyon said:
"* * * If it is doubtful whether he intended the distribution among his grandchildren to be per stirpes or per capita, the court should adopt a construction in favor of the former method, not only as being most probably in accordance with his intention, but also as being in accordance with the policy of the law. * * *"
In VanHouten v. Hall, 73 N.J. Eq. 384, where the court considered the construction and manner of distribution of a gift to a class consisting of A and the children of B, Mr. Justice Swayze said (at p. 385):
"No doubt the general rule is that where there is a gift to the children of several persons, they take per capita (2 Jarm.
(Randolph Talcott's ed.) 756), and the rule prevails even where there is a devise or bequest to one person and the children of another. The latter branch of the rule dates from Blackler
v. Webb, 2 P.W. 383, and notwithstanding the criticism of Chief-Justice Kirkpatrick in Roome v. *Page 583 Counter, 6 N.J. Law (1 Halst.) 111, is recognized in this state. (Citing cases), but the courts have not failed to express dissatisfaction with it, and it is said that this mode of construction will yield to a very faint glimpse of a different intention in the context. 2 Jarm. 757.
"Chancellor Zabriskie, in Fisher v. Skillman, supra, disregarded it because the will showed the testator's design to make his children equal, and so where there is a gift to the children of several, by way of substitution, the children will generally take per stirpes. 2 Jarm., supra; Price v. Lockley,6 Beav. 180; Cosgreve v. Palmer, 16 Beav. 435; 23 L.J. Ch. 54;Shailer v. Groves, 6 Hare 162."
The key to the intention of the testator is to be found both in the general scheme of his will and in the express definition of the word "issue" contained in paragraph "h" of Article Fourth of the will. The testator made his will less than two years prior to his death, and at a time when the situation of his family was substantially the same on both dates. At his death he was survived by his widow and four children, whose ages ranged from thirty-one years to about forty years, and one of whom, George, was unmarried. He left five grandchildren, of whom four were children of his son, Henry, and one was a child of his daughter, Daisey. In his will he prefaced the gift of the residue contained in Article Fourth with the statement that it was his wish that the principal of his estate should remain intact for the benefit of his grandchildren and their families, the reason given being that he had already given his sons sufficient capital to make them independent during their lifetime. In McGill v. TrustCompany of New Jersey, 94 N.J. Eq. 657; affirmed, 96 N.J. Eq. 331,
Vice-Chancellor Buchanan, speaking of the phrase "grandchildren and their families" as used in the Graves will, said (at p. 673): "* * * By the `families' of his grandchildren he meant, it is clear, his great grandchildren."
Having in mind his stated purpose the testator created a trust and gave an annuity of $20,000 a year from the income to his widow for life and the balance of the income to his *Page 584 
children and grandchildren, including grandchildren born after his death, in equal shares during their respective lives. Upon the death of the last surviving grandchild he directed his trustees to divide the principal to and among the issue of his grandchildren, that is to say, among his great-grandchildren, share and share alike, the issue of any deceased great-grandchild to receive the share its parent would have received if living. For the purpose of considering these provisions of the will the gifts of income to the testator's children can be ignored, for although they are substantial in amount they were apparently considered by the testator as token gifts rather than gifts of substantial parts of his estate. The testator therefore placed his grandchildren in the position which normally would have been occupied by his children, giving them equal shares in the income for their lives subject to the interests of the widow and children. After providing for the grandchildren in this manner he then gave the corpus of the trust to the next succeeding generation, namely, to his great-grandchildren, and since these beneficiaries were in equal degree of relationship to him he likwise treated them on an equal basis. The grandchildren and great-grandchildren were, therefore, the primary objects of the testator's bounty, the first class as to the income of the trust and the second class as to the corpus. However, the testator recognized that some of the primary beneficiaries might die during the existence of the trust, and he therefore substituted their issue as beneficiaries to receive the share which the deceased primary beneficiaries would have received if living. Under well settled rules of construction it is established that each great-grandchild born prior to the time of distribution of the corpus would have taken a vested interest in the corpus
subject to being divested only upon his or her death prior to the time of distribution leaving issue surviving and subject to diminishment as to the amount of his share upon subsequent birth of great-grandchildren prior to the period of distribution.Male v. Williams, 48 N.J. Eq. 33; 21 Atl. Rep. 854; Haggerty
v. Hockenberry, 52 N.J. Eq. 354; 30 Atl. Rep. 88; Clark v.Morehous, 74 N.J. Eq. 658; 70 Atl. Rep. 307; Sadler *Page 585 
v. Bergstrom, 113 N.J. Eq. 567; 168 Atl. Rep. 50; Schumacher v.Howard Savings Institution, 128 N.J. Eq. 56; 15 Atl. Rep.
2d 107; affirmed, 131 N.J. Eq. 211; 23 Atl. Rep. 2d581.
The complete plan of the testator as disclosed by his will was to vest in his grandchildren the right to the income in equal shares, subject to the interests given to the widow and children, and to vest in his great-grandchildren upon birth the right to the corpus which would be distributable upon the death of the last surviving grandchild. In each case, however, he substituted for any primary beneficiary who might die a class of descendants of such primary beneficiary, such class taking only the share which the deceased primary beneficiary would have taken if living. These provisions for substituting descendants in the place of their deceased ancestors of themselves indicate that the design of the substitutional gifts was stirpital in character.Dennis v. Dennis, supra; In re Fisler, supra; Camden SafeDeposit and Trust Co. v. Holl (Court of Errors and Appeals),115 N.J. Eq. 324; 170 Atl. Rep. 670.
Not only does the general plan of the will indicate that the testator had a stirpital distribution in mind so far as the substitutionary gifts are concerned, but in addition the testator in paragraph "h" of Article Fourth of the will expressly defined the meaning of the word "issue" as he used it and clearly indicated that he did not intend remote descendants to share with their living ancestors. In that paragraph the trustees were directed to divide the corpus "to and among the issue of my said grand children, that is to say, among my great grand children, share and share alike, the issue of any deceased great grand child to receive the share its parent would have received if living."
The Dennis and Fisler Cases are dispositive of the issue now before the court. In the above quoted provision of paragraph "h" of Article Fourth of the will, the testator said in so many words that he used the word "issue" not in its normal technical sense but in a restricted sense, namely, that the first generation after the deceased grandchildren should take the *Page 586 corpus and that more remote descendants should be permitted to share only in the event of the death of a primary taker, and in that event the remote issue should take only the share which the deceased primary taker would have taken if living. What the testator said was that as used in his will "issue of deceased grandchildren" was used in a stirpital sense, with great-grandchildren constituting the stirps. There is no indication that the word "issue" is used in more than one sense throughout the will.
I conclude that the word "issue," as used in paragraph "g" of Article Fourth of the testator's will, when construed in the light of the foregoing authorities, and consequently as used in the provision of the settlement agreement here involved, means issue per stirpes, or issue taking by right of representation, so that remote descendants are not entitled to a distributive share of the income of the trust while their ancestors are living. The plan of the will as a whole indicates to my mind that the testator intended the substitutional gifts of income andcorpus to be distributed on a stirpital basis, with remote descendants being let in to share only in substitution for their deceased ancestors.
Complainant has properly distributed to the defendants, Mary Graves Haviland, Barbara Graves Jenks and Henry Dickson Graves, excluding their children, the share of income of the trust to which their father, Henry Graves, 3d, would have been entitled to if living, and complainant is instructed to continue to so distribute such income while they respectively continue to live during the continuance of the trust. *Page 587