[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 425 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 426 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 427 
This complaint is brought for construction of the last will and testament of Marie DePui Norton and for judgment as to whether the release executed by Louis Lawrence, life tenant, of his life estate, had the effect of accelerating the trust and immediate distribution of the corpus of the trust to the remaindermen.
Marie DePui Norton died testate, a resident of the Township of Cranford, Union County, New Jersey, in 1922. Her last will and testament was admitted to probate by the Union County Surrogate on May 20, 1922, and letters testamentary were issued to Solon Lathrop Norton, the decedent's husband, who was named as the executor and trustee therein. The said Solon Lathrop Norton died on October 28, 1922, whereupon the Cranford Trust Company was appointed administrator with the will annexed. On February 9, 1923, the Cranford Trust Company was relieved of its duties as administrator c.t.a., and letters of substituted administration were issued to Louis Lawrence, a son of the testatrix, and to the Westfield Trust Company. The substituted administrators qualified as trustees and are administering the estate in that capacity.
Under the fourth paragraph of her will, the testatrix bequeathed all the rest, residue, and remainder of her estate to her executor and trustee therein named, to pay one-half of the net income therefrom to her husband, Solon Lathrop Norton, for life, and the remaining half to her son, Louis Lawrence, for life and further directed that should her husband, Solon Lathrop Norton, die before her said son then all of the net income from the estate was to be paid to her son. In the event of the death of her said son leaving lawful issue him surviving, then the share of the income which he would have received if living was by her will to be paid and divided among said issue, share and share alike. Upon the death of both her husband and son, testatrix devised all of her property to the *Page 429 
lawful issue of her son, to be divided among them share and share alike.
Solon Lathrop Norton died October 28, 1922. The son, Louis Lawrence, at the time of the filing of the bill of complaint was 76 years of age. He has five children, Stuart N. Lawrence, Alexander K. Lawrence, Robert L. Lawrence, Marie L. Loblein, and Solon L.N. Lawrence. The said Louis Lawrence also has five grandchildren, who are infants, and for whom I. Grant Scott, Clerk, was appointed as guardian ad litem.
On November 18, 1946, Louis Lawrence, the surviving life tenant, executed an instrument purporting to be a release of any right, title, and interest that he might have in the life estate created under the testatrix' last will and testament.
The word "issue" as used in a will may be given its ordinary meaning or may be given a more restricted meaning. In its ordinary sense, the word "issue" includes grandchildren and remoter descendants as well as children, but where it is apparent from the will that the testator intended that the word be given a restricted meaning that intention will be attributed to the word.
In Pierson v. Jones, 108 N.J. Eq. 453, the rule is expressed as follows:
"The correct rule is well stated by Chancellor Magie in Inglisv. McCook, 68 N.J. Eq. 27 (at p. 39), as follows:
`But when used in a will a more restricted meaning may be attributed if, from the terms of the testamentary disposition, it clearly appears that the testator used the word in a particular meaning less general than its ordinary meaning. * * *
`To properly pursue this inquiry, it is obvious that we must start with the assumption that the testator used the word in its ordinary signification. We must then examine the whole will, and we will not be able to attribute to the word a more restricted meaning unless we find in the will itself clear indication that the testator used it in this case in such restricted meaning.'"
Where the testamentary disposition provides for issue to take the share their parent would have taken if living, the word "issue" will be given its restricted meaning because such a disposition suggests that the testator in using the words "their *Page 430 
parent" referred to children only as issue. Central Hanover Bank Trust Co. v. Helme, 121 N.J. Eq. 406, 190 Atl. 53.
In In re Fisler, 133 N.J. Eq. 421 (E. A.), the court atpage 423 stated:
"If not restrained by the context, the word `issue' is synonymous with descendants. It is nomen generalissimum; and, in its primary, technical sense, it signifies grandchildren and all remoter descendants, and the distribution is per capita and not per stripes. Weehawken Ferry Co. v. Sisson, 17 N.J. Eq. 475; Dennis v. Dennis, supra [86 N.J. Eq. 423]; Coyle v.Coyle, 73 N.J. Eq. 528; Inglis v. McCook, 68 N.J. Eq. 27. It is a rule of construction designed to advance and not defeat the testamentary object. If there be nothing more in a will touching the construction of the term `issue' than a `direction that the issue are to take the shares of their parents, that is enough to confine the general meaning of the word "issue" to the particular meaning of children of that parent.' Pruen v.Osborn, 11 Sim. 132. To the same effect is Lehigh v.Norbury, 13 Ves. 340. See, also, Sibley v. Perry, 7 Ves.
522."
In Fidelity Union Trust Co. v. Graves, 139 N.J. Eq. 571, at 582, the rule is stated as follows:
"The rule as to the meaning of the word `issue' as stated in the cited cases is divided into two general rules: first, that it means descendants of every degree, and second, that distribution is per capita rather than per stirpes. Both branches of the rule are subject to the same qualification, that a different result will be reached if such was the intention of the testator. In the present case if the word `issue' were to be treated as an isolated word without reference to the other provisions of the will, it might have the meaning attributed to it in the cited cases, but it cannot be treated as an isolated word and the question is whether a more restricted meaning must be attributed to the word, either as to the persons contemplated within the description or as to the manner of distribution, in order to carry out the plan and intention of the testator as expressed in the will as a whole."
In the instant case, the testatrix bequeathed the residue of her estate upon the death of her husband and son "unto the lawful issue of my said son, to be divided among them share and share alike." It is evident therefore that the testatrix intended that the word "issue" be given its general meaning, and that it means descendants of every degree of her son, Louis Lawrence, and the word cannot be given its restricted meaning. The "lawful issue" of the testatrix' son, Louis Lawrence, includes not only his children but also grandchildren. *Page 431 
There can be no doubt but that the bequest to the lawful issue of the testatrix' son under the seventh paragraph of her will vested immediately upon her death. This gift comes clearly within the principles enunciated by Vice-Chancellor Jayne in Simpkinsv. Simpkins, 131 N.J. Eq. 227, 24 Atl. (2d) 821, wherein he stated that where there is a testamentary gift of a life estate and a gift of the remainder after the termination of the life estate, the gift in remainder will be deemed vested immediately in the absence of some controlling equity or some evidence in the will from which a different intent is implied. The policy of the law requires that legacies in all cases shall be deemed to be vested rather than contingent unless such a construction is clearly discordant with the intention of the testator. This rule of construction is always observed where it is apparent from the terms of the will that a future gift is postponed merely to let in some other interest such as a life estate. The future gift is vested although the enjoyment is postponed.
The bequest to the "lawful issue" of the testatrix' son, Louis Lawrence, constitutes a class gift. A class gift is defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the actual number. Clark v. Morehous, 74 N.J. Eq. 658, 70 Atl. 307;The Paterson Savings Institution v. DeGray, 136 N.J. Eq. 371, 42 Atl. (2d) 264; Fidelity-Philadelphia Trust Co. v.Jamison, 137 N.J. Eq. 385, 45 Atl. (2d) 134; FidelityUnion Trust Co. v. Graves, supra.
The same difficulty arises in this case as in all cases involving class gifts in determining at what time the members of the class shall be ascertained and further who constitute the class. Generally members of the class are determined at the time the instrument of gift takes effect, and this is ordinarily at the date of the death of the testator, yet there may be provisions in the will which will fix the membership of the class as of the date of the execution of the will or upon the *Page 432 
happening of some event in the future. Clark v. Morehous,supra.
In the instant case, the "lawful issue" of the testatrix' son, Louis Lawrence, cannot be completely ascertained until the time of his death, and although the gift vested at the time of the testatrix' death the class must remain open until the death of Louis Lawrence to admit new members, and at that time the class will include all of the descendants of Louis Lawrence who were alive at the death of the testatrix and who subsequently became members of the class before the death of the life tenant.
Under a testamentary gift to "issue," where the word is used without any terms to qualify its meaning, it is very generally held that the children of the ancestor and the issue of such children, although the parent is living, take in equal sharesper capita, and not per stirpes, as primary objects of the disposition. All courts seem to agree in holding that "issue" is a word which lends itself very easily to the expression of representation and that the presumption which favors a percapita distribution yields to a very faint glimpse of a different intention. 57 Am. Jur., Wills, § 1305.
As stated in Fidelity Union Trust Co. v. Graves, supra, where the word "issue" means descendants of every degree, the distribution is per capita rather than per stirpes, and further where there is doubt as to whether the testator meant aper stirpes or per capita distribution the court will adopt a construction in favor of a per stirpes distribution.
In the present case, since "lawful issue" means descendants of every degree of the life tenant, Louis Lawrence, the distribution must be per capita rather than per stirpes. There is no doubt as to the manner in which the testatrix intended distribution, and there is nothing in her will to warrant the court in adopting a construction in favor of distribution per stirpes rather thanper capita.
The doctrine of acceleration of remainders has been adopted in New Jersey, and the rule of construction has been established by a long line of decisions. *Page 433 
Vice-Chancellor Leaming in Anthony v. Camden Safe, c., Co.,106 N.J. Eq. 41 (at p. 42), states the rule as follows:
"Although the language of the will refers to the death of the particular tenant as the time for distribution to the remaindermen, it is an established rule of construction of testamentary provisions of that nature that a testator will be presumed to have intended to give the property in remainder from and after the termination of the preceding estate in the absence of some controlling equity or an express or clearly implied provision in the will to the contrary; and accordingly the provisions for distribution at the death of the life tenant, standing alone, will be understood to relate to the termination of the precedent estate and accelerate distribution to remaindermen whose estates in remainder are vested. As specifically pointed out in Sherman v. Flack, 283 Ill. 457, and in Holdren, Adm. v. Holdren, 78 Ohio St. 276, this established doctrine proceeds upon the supposition that, although the ultimate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of the remainder to take effect in every event which removed the prior estate out of the way."
In addition to the Anthony case, supra, the question of acceleration was presented in each of the following cases, and upon the facts in each particular case the court therein determined whether or not the corpus of the trust was accelerated: Schmieder v. Meyer, 97 N.J. Eq. 335,127 Atl. 162; Fisch v. Fisch, 105 N.J. Eq. 746, 155 Atl. 146; In reNilsson, 112 N.J. Eq. 445, 164 Atl. 578; Bennett v.Fidelity Union Trust Co., 122 N.J. Eq. 455, 194 Atl. 449;Bennett v. Fidelity Union Trust Co., 123 N.J. Eq. 198,196 Atl. 375; Buhring v. National Standard Co., 127 N.J. Eq. 243,12 Atl. (2d) 632; Walter v. Thielke, 127 N.J. Eq. 402,13 Atl. (2d) 649; Simpkins v. Simpkins, supra; Young v.Eagon, 131 N.J. Eq. 574, 26 Atl. (2d) 180; ProvidentTrust Co. of Phila. v. Osborne, 133 N.J. Eq. 518, 33 Atl.(2d) 103.
The rule will be applied and a remainder accelerated in the absence of some controlling equity or an express or clearly implied provision in the will to the contrary. Under the last will and testament of the testatrix in this case, the lawful issue of her son, Louis Lawrence, acquired a vested remainder immediately upon her death, and unless some controlling equity or an express or clearly implied provision in the will to the contrary can be found it must be presumed that the testatrix *Page 434 
intended to give the property in remainder from and after the termination of the preceding estate. Under the terms of the will in question, there is such a contrary intention. The gift to the lawful issue of the life tenant is a class gift, all of the members of which cannot be ascertained until his death. Since the members of the class cannot be completely ascertained until that time, the application of the doctrine and distribution of the estate at this time would negate her testamentary scheme as expressed in the will itself. A present distribution of the corpus of the estate would disinherit grandchildren of the life tenant born between now and the time of his death.
Judgment will be entered in accordance with forgoing conclusions.